In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2017

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SAMUEL WHITT,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 95 CR 33--William C. Lee, Chief Judge.

Argued January 11, 2000--Decided May 1, 2000

Before COFFEY, EASTERBROOK and EVANS, Circuit Judges.

COFFEY, Circuit Judge.  On December 20, 1995, a
federal grand jury sitting in the Northern
District of Indiana returned a one count
indictment charging Samuel Whitt with conspiracy
to distribute cocaine, in violation of 21 U.S.C.
sec. 846. After a jury returned a guilty verdict,
the judge sentenced Whitt to life imprisonment,
five years' supervised release, and a $50 special
assessment. On appeal, Whitt argues that: 1) the
district court erred in not giving the jury an
instruction on a multiple conspiracy; 2) the
indictment was constitutionally defective because
it did not specifically allege the type and
quantity of controlled substances; and 3) the
trial court erroneously calculated the quantity
of drugs for which he was responsible. We affirm.

I.  BACKGROUND

   Although Whitt was not indicted until 1995, the
genesis of the case occurred in 1992 when the
government charged seven people, including Ruby
Lamb (Ruby), Necole Lamb (Necole), and Helen
Jackson (Helen),/1 with conspiring to possess
and distribute cocaine. After Ruby, Necole, and
Helen were convicted by a jury (counsel for the
appellant informed this Court at oral argument
that the other four were acquitted), they
received lengthy prison sentences./2
Understandably unhappy with the prospect of

spending a considerable portion of their lives behind bars, the three women contacted the government and agreed to assist in the case against Whitt in exchange for reduced sentences./3

Although Whitt was not indicted until 1995, the joint federal, state, and local investigation of Whitt's and Ruby's criminal activities began in 1990. This investigation revealed that Whitt and Ruby were the organizers and leaders of a conspiracy to distribute controlled substances in the Northern District of Illinois; a conspiracy which distributed not only cocaine, but heroin and marijuana as well. And although Whitt was charged with a conspiracy to distribute controlled substances between December 1990 and September 1991, the government believed that Whitt and Ruby had been involved in the illegal distribution of controlled substances since the late 1970's or early 1980's.

As the leader and organizer of this conspiracy, Whitt recruited Helen and Necole into the conspiracy for the purpose of storing cocaine and heroin at their residences and to distribute narcotics./4

A.  The Drugs

Not only did Whitt recruit individuals to distribute narcotics for his operation, but he also personally supplied Necole and Ruby with cocaine for distribution. According to Necole, Whitt supplied her with the following amounts of cocaine for distribution from approximately June 1990 to December 1990:   ounce of cocaine three times a week, for a total of approximately one kilogram of cocaine during the last half of 1990.

Whitt also supplied Ruby with three to four bags of cocaine per week from 1990 through April 1991. Each bag contained the following quantities of cocaine: 10 – one ounce amounts; 10 – 1/2 ounce amounts; 10 – 1/4 ounce amounts; and 10 – 1/8 ounce amounts. Thus, Whitt supplied Ruby with approximately 57 ounces of cocaine per week; for a total, averaged over the whole period, of approximately 108 kilograms of cocaine./5

Not only did Whitt supply members of his organization with drugs, but he also, at times, sold narcotics directly to customers. During 1991, the investigative agents in this case used various informants to purchase 1/8 ounce quantities of cocaine from the defendant for approximately $200 a buy./6

B.  The Money

Further supporting the government's contention that Whitt was involved in a large drug operation, law enforcement agents seized approximately $119,000.00 from Whitt and Ruby in March of 1990 while the two were at the Miami International Airport./7 As the sentencing judge concluded, Whitt has yet to offer a satisfactory explanation as to how the two of them came into possession of such a large sum of money, especially given the fact that neither he nor Ruby had a visible means of income.

In addition, on February 8, 1991, two of the individuals Whitt recruited into his operation, Lavon Chandler and John Starkes, Whitt's sister and cousin, respectively, were stopped near Daytona Beach, Florida, in Chandler's automobile./8 After the two agreed to allow the officers to search the car, police discovered a suitcase containing $343,540.00 in the trunk of the vehicle.

During the course of the stop, Starkes and Chandler were placed in the back of a police squad car. As the two individuals were trying to decide upon an explanation for the money found in the trunk of their car, a hidden microphone in the squad car captured the following conversation between the two detainees:

Chandler: Only thing I know is we just be quiet, quit acting crazy. When they ask, they said we had the right to remain quiet, tell 'em we don't want [to] talk cause we didn't do anything wrong.

Starkes: But what attorney we gonna get?

Chandler: We can deal with that when we get back home, now just say it's my money and we don't want to talk to nobody.

Starkes: Say it's yours.
Chandler: It don't matter . . . if you wanna say it's mine you can.

Starkes: [Unintelligible]

Chandler: All I'm saying is we don't know.

Starkes: Okay. We should have talked to Sam. We should have talked to him and found out what to do if a situation like this came about.

Chandler: Promise me [unintelligible] don't want anyone to know./9

According to the PSR, Whitt offered this rather lame version of events surrounding the alleged conspiracy:

Mr. Whitt contends that at no time between December of 1990 and September 4, 1991 [the dates charged in the indictment], did he join a conspiracy to distribute controlled substances. He indicates that he knew the participants who had been convicted previously of the conspiracy, but did not have them either working for him or conspiring with him to violate the controlled substance law. Mr. Whitt further cannot explain how his left thumb print was on two of the baggies in question. He indicates that it could have been when he visited Helen Jackson's residence and she cooked dinner for him which occurred on several occasions during the operative period. Mr. Whitt further contends that he did not direct Helen Jackson or [Necole] Lamb in their drug dealing activities in any manner whatsoever. The drug ledger involved was kept in the hand of Helen Jackson and was kept for the purpose of keeping an account of her sister, Ruby Lamb's drug inventory.

After a two day trial, the jury found Whitt guilty of conspiracy to distribute cocaine. At Whitt's sentencing hearing, the government argued that the defendant was directly responsible, under the relevant conduct provision of the guidelines, for at least 607 kilograms of cocaine. The government, in reaching its drug calculation, relied heavily on Ruby's testimony concerning her trips to south Florida with Whitt to purchase cocaine. Ruby testified that between 1989 and 1992 she traveled with the defendant on thirty occasions to south Florida and purchased between 15 and 20 kilograms each trip. The government further argued that "for sentencing purposes the government would split the difference between these two numbers for an average of 17.5 kilograms of cocaine per each trip." Because Ruby testified that on one trip they purchased one hundred kilograms, the government asserted that the total amount Whitt was accountable for was at least 607 kilograms (17.5 x 29 trips = 507.5 kilograms + 100 kilograms = 607.5 kilograms).

Whitt, on the other hand, argued that "the undercover buys by the informants, the amount of drugs estimated in the ledger, the amount of drugs seized [from his residence], and the one statement by Ms. Lamb could form a reliable basis for determining the drug quantity in this case. Using that information, the drug quantity would be approximately 3.5 kilograms--on the generous side."

The district court, in concluding that Whitt was responsible for over 150 kilograms of cocaine, determined that Whitt was

conservatively responsible for approximately 21.2 kilograms. Additionally, defendant is responsible for the amount of drugs seized in the raid. Thus, to the above sums, must be added 44.6 grams of heroin, along with 1.6 kilograms of marijuana and 262 grams of cocaine which converts to [a] total [of] approximately 21.5 kilograms of cocaine.

The figure, however, only takes into account the actual charged period of the conspiracy and a two month period when [Necole] Lamb resumed working for the defendant . . . . It does not, however, account for other relevant conduct.

In holding Whitt accountable for additional quantities of cocaine, the sentencing judge relied on the testimony of Ruby Lamb, stating that he believed her testimony despite the fact that she suffered a nervous breakdown in 1991 and that some of her testimony was shown to be incorrect.

As mentioned previously, Ruby testified that she and Whitt purchased 15 to 20 kilograms of cocaine on 30 different occasions between 1989 and 1991. Additionally she testified that she went to Los Angeles on five different occasions in 1990 to purchase "10 to 15 balls of black tar heroin." Given the large amounts of narcotics Ruby testified to, the sentencing judge stated that "[i]n sum, with respect to the amount of drugs attributable to the defendant, this Court is of the view that defendant was responsible for distribution in excess of 150 kilograms of cocaine (let alone whatever amount of heroin) which, for the purposes of the sentencing guidelines is all that really matters since the guidelines top off at that level." Whitt appeals.

II.  ISSUES

On appeal, we consider: 1) whether the district court erred by not giving the jury an instruction on a multiple conspiracy; and 2) whether the trial court erroneously calculated at sentencing the quantity of drugs for which Whitt was responsible./10

III.  DISCUSSION

A.  Multiple Conspiracy Jury Instruction

Normally, the finding of the existence of a single conspiracy is one that this court will overturn only for clear error. See United States v. Narvaez, 995 F.2d 759, 762 (7th Cir. 1993). But, in this case, the defendant did not submit a multiple conspiracy instruction and we, therefore, review the issue of whether the trial court properly gave only a single conspiracy

instruction for plain error. See United States v. Easley, 977 F.2d 283, 285-86 (7th Cir. 1992). In order to establish plain error, Whitt must demonstrate: 1) that error occurred; 2) that the error was plain; and 3) that the error affected his substantial rights. See Johnson v. United States, 520 U.S. 461 (1997).

Whitt argues that the evidence does not support a finding of a single conspiracy; rather, he argues, the government presented evidence of multiple conspiracies. Whitt claims that the court's failure to instruct the jury on multiple conspiracies thus deprived him of his right to a fair trial because the jury may have found him guilty of a conspiracy separate from what was charged in the indictment.

But, we have long held that

[w]hether a single conspiracy exists is a question of fact; consequently "[t]he jury gets first crack at deciding 'whether there is one conspiracy or several when the possibility of a variance appears.'" United States v. Paiz, 905 F.2d 1014, 1019 (7th Cir. 1990) (quoting United States v. Percival, 756 F.2d 600, 609 (7th Cir. 1985)). This is because the jury's verdict must be interpreted as a finding that the government presented sufficient evidence to prove its indictment beyond reasonable doubt, and that is all that we require of the prosecution. The fact that the government's evidence might also be consistent with an alternate theory is irrelevant; the law does not require the government to disprove every conceivable hypothesis of innocence in order to sustain a conviction on an indictment proved beyond reasonable doubt. United States v. Beverly, 913 F.2d 337, 361 (7th Cir. 1990); United States v. Douglas, 874 F.2d 1145, 1152 (7th Cir. 1989). Consequently, "even if the evidence arguably establishe[d] multiple conspiracies, there [is] no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." United States v. Prince, 883 F.2d 953, 959 (11th Cir. 1989).

United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir. 1991); see also United States v. Magana, 118 F.3d 1173, 1188 (7th Cir. 1997).

Upon review of the record, we hold that, contrary to the defendant-Whitt's argument on appeal, the evidence sufficiently supports the jury's finding of a single conspiracy. Specifically, the record established a single purpose, distributing controlled substances,

including cocaine, in the Northern District of Indiana, to which Whitt, Ruby Lamb, Necole Lamb, and Helen Jackson all were committed. The evidence also demonstrates the manner in which the common goal was met; that is, Whitt and Ruby Lamb "stashed" and picked-up narcotics at Helen Jackson's house while Necole Lamb and others acted as drug runners at the direction of Whitt and Ruby. As cases like Townsend dictate, the fact that other theories of criminal conduct may also be supported by the record does not diminish the fact that, in this case, the evidence fully supported a single conspiracy instruction.

Whitt also complains that Necole Lamb testified to events outside the conspiracy charged in the indictment and that the jury may have therefore based his conviction on criminal activity not charged in the indictment. However, Whitt ignores the fact that at the close of the evidence at trial the judge instructed the jury that:

I want to instruct you, ladies and gentlemen, that you have just heard evidence of the acts of the defendant, other than those charged in the indictment and specifically if you've been following the dates here, they actually precede the commencement of the alleged conspiracy which was December of 1990. So you've just heard testimony about certain acts of the defendant that pre-date the opening of the conspiracy. You may consider the evidence only on the question of the relationship between the witness and the defendant and others. This evidence is to be considered by you only for this limited purpose.

(emphasis added). That is, the judge instructed the jury that it was to consider any evidence that pre-dated the opening of the conspiracy only for the limited purpose of establishing the relationship between the witness, the defendant, and other relevant individuals, and the jury is presumed to have followed the court's limiting instruction. See Doe v. Johnson, 52 F.3d 1448, 1458 (7th Cir. 1995) ("Jurors are presumed to follow . . . instructions . . . .") (citations omitted). Thus, the fact that Necole Lamb testified about her involvement with Whitt prior to the events alleged in the charged conspiracy does not establish a separate conspiracy. See Magana, 118 F.3d at 1188-89.

The record clearly supports a finding of a single conspiracy. Furthermore, Whitt never submitted a proposed multiple conspiracy instruction. Thus, we are convinced that the trial judge did not commit plain error in failing to instruct the jury on multiple conspiracies.

B.  The Trial Court's Calculation of Drug

Quantity

On appeal, Whitt asserts that he is responsible not for the 150 kilograms the sentencing judge attributed to him, but rather for 3.5 kilograms of cocaine. In so arguing, Whitt contends that the judge erred because he relied upon testimony which was unreliable and that the witnesses were not credible.

However, the guidelines require that

When choosing the base offense level in a narcotics case, the district court must take into consideration not only the drug amounts involved in the offense of conviction, but any that were part of the same course of conduct or common scheme or plan as the offense of conviction. This Court reviews the sentencing court's calculation of the drug amount only for clear error. We must be satisfied, however, that the calculation is based on reliable evidence; speculation and unfounded allegations will not do.

United States v. Pigee, 197 F.3d 879, 889 (7th Cir. 1999) (internal citations and quotations omitted)./11 Furthermore, "[w]e have frequently held that the trial judge is in the best position to judge the credibility of witnesses who offer conflicting testimony concerning the quantity of drugs attributable to a defendant for purposes of sentencing." United States v. Pitz, 2 F.3d 723, 727-28 (7th Cir. 1993); see also United States v. Mancillas, 183 F.3d 682, 701 n. 22 (7th Cir. 1999) ("We do not second-guess the [trial] judge's credibility determinations because he or she has had the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." (citation omitted) (brackets in original)), petition for cert. filed, No. 99-6626 (Oct. 18, 1999).

As previously discussed, the court's opinion explained in detail the facts that it relied on to reach the 150 kilograms used at sentencing. All of these facts were gleaned from testimony which the sentencing judge deemed to be reliable and credible; specifically Ruby testified that she and Whitt purchased 15 to 20 kilograms of cocaine on 30 different occasions between 1989 and 1991, accounting for well over 150 kilograms of cocaine. Despite Whitt's urging that this court find the testimony of Ruby, Necole, and

Helen incredible, the fact remains that the judge concluded, with full knowledge that Ruby had suffered a nervous breakdown and that some of her testimony was inaccurate, that her testimony concerning the amount of cocaine was reliable and accurate enough to hold Whitt responsible for in excess of 150 kilograms of cocaine; the maximum level under the guidelines./12 We know of no convincing reason, nor has Whitt offered one, to overturn the district court's credibility determinations. Thus, we hold that the court did not commit clear error in determining that Whitt was responsible for 150 kilograms of cocaine.

The decision of the district court is

AFFIRMED.


/1 Ruby and Helen are sisters and Necole is Ruby's daughter.

/2 Ruby received 24 years, Necole received 11 years, and Helen received 31 years.

/3 In exchange for their assistance, the government filed Rule 35 motions for a reduction in sentence on behalf of the three women.

/4 Necole testified that although she initially began to work for the defendant as a "runner," she later got on the inside of the operation and began to work directly with Whitt. Helen testified that she managed a "stash house" for the drug conspiracy at the request of the defendant; a task for which she received $100 a day. In addition to recruiting Helen and Necole, Whitt also recruited Lavon Chandler (his sister), John Starkes (his cousin), Samantha McCall, Sherrie Hatch, and Kay Shelton into his organization for the purposes of acquiring and distributing controlled substances.

/5 During Whitt's trial, the government introduced Ruby's drug ledger which demonstrated, according to expert FBI testimony, that Whitt was responsible for an additional three kilograms of cocaine. The government therefore estimated that Whitt was personally responsible for the distribution of approximately 111 kilograms of cocaine between June of 1990 and September of 1991. This was in addition to the 1.6 kilograms of marijuana, the 262 grams of cocaine, and the 44.6 grams of heroin which was seized from his residence.

/6 These buys occurred on May 15, June 6, June 7, June 13, June 26, July 2, July 19, and September 3, 1991.

/7 The record does not reflect either how or why this money was seized.

/8 The record does not reflect why the vehicle was stopped.

/9 The government believes that this circumstantial evidence demonstrates that the currency belonged to the defendant-Samuel Whitt; and during the sentencing hearing, the judge, based upon the evidence presented, found that the currency belonged to Whitt.

/10 Whitt also claims that the amount of drugs he is to be held responsible for is a matter for the jury. But because such an argument has specifically been rejected on numerous occasions by this court, see, e.g., United States v. Jackson, 2000 WL 298575, at *9 (7th Cir. March 23, 2000), we decline to consider this issue any further. See also United States v. Edwards, 523 U.S. 511, 513-14 (1998).

/11 Furthermore, a participant in a drug conspiracy is accountable for the "reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. sec. 1B1.3, comment (n.2); see also United States v. McEntire, 153 F.3d 424, 438 (7th Cir. 1998); United States v. Mumford, 25 F.3d 461, 465 (7th Cir. 1994).

/12 We note that Necole and Helen testified at Whitt's trial and that the jury also found their testimony credible.