In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1836

United States of America,

Plaintiff-Appellee,

v.

Wendell Nance, Sr.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:98CR40057-001--J. Phil Gilbert, Judge.

Argued September 28, 2000--Decided December 29, 2000

Before Manion, Rovner, and Diane P. Wood, Circuit
Judges.

Diane P. Wood, Circuit Judge.  Wendell Nance, Sr.,
and his son Wendell Nance, Jr. (nicknamed
"Ardell"), were charged and convicted for
conspiring to distribute crack cocaine, in
violation of 21 U.S.C. sec.sec. 846 and
841(a)(1). Ardell chose to plead guilty, but
Wendell's case went to trial before a jury. Only
Wendell has appealed. Initially, he challenged
only two aspects of his sentence, but with the
permission of this court, he added an argument
that his sentence of 262 months was unlawful
under the Supreme Court's recent decision in
Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). We
agree that in principle his sentence of more than
240 months (or 20 years) cannot be reconciled
with Apprendi./1 Nevertheless, we conclude that
Wendell's failure to raise this point before the
trial court means that our review is for plain
error only, and on the record of this case there
is none. As there is no merit in his two
challenges to his sentence, we therefore affirm
both the conviction and the sentence.

I

   The underlying facts are typical of the many
cocaine conspiracy cases that reach this court.
The two Nances moved to DuQuoin, Illinois, a
small town north of Carbondale, in late February

1998. Over the next month, they participated with several others in a cocaine distribution operation. Wendell, along with Ardell and co-conspirators David Jones and Dexter Dunklin, made a number of trips to St. Louis, Missouri, to purchase crack cocaine for redistribution in DuQuoin. On two such trips, Ardell and Jones obtained money from Wendell for the purchases, and upon their return they gave Wendell his share of the drugs. Jones testified that Ardell purchased between 1/8 ounce (3.5 grams) and 1/4 ounce (7 grams) on each trip. After Ardell's arrest on March 25, 1998, Jones and Wendell made two more trips to St. Louis to purchase more crack cocaine. Other evidence suggested that the total number of trips was at least seven, and apparently many more than that.

While in DuQuoin, Wendell lived in Gynelle Ledbetter's apartment. Not only did he also store his crack there, but he also made no secret of that fact. Ledbetter testified that on one occasion, he was in her residence with two large rocks of crack cocaine. She described one of them as approximately the size of a golf ball, and the other as slightly smaller. Wendell cut the smaller rock into 27 resale portions. Another witness, Shirley Horner (Ledbetter's sister), also testified that she saw Wendell with a golf ball-sized chunk of crack cocaine at Ledbetter's apartment.

At the trial, Ardell testified that in late March Wendell told him to go to his grandmother's house in Kansas to retrieve an SKS assault rifle. He explained that Wendell was concerned that the success of his new crack business might attract the attention of thieves. On his way back from Kansas, with the rifle in his possession, Ardell stopped in St. Louis to buy more cocaine for himself and Wendell. Once back in DuQuoin, Ardell stored the rifle at Phyllis Woody's trailer, which was just a block from Ledbetter's apartment. Wendell demonstrated that he knew where the rifle was located when, a short time later, he went to retrieve it and took it back to the Ledbetter apartment to break up an argument between David and Diane Jones. His methods were not too subtle: he pointed the rifle at the two troublemakers and threatened to shoot them, and he then threatened to shoot everyone. No one was shot, however, and afterwards Ledbetter and David Jones took the rifle and hid it in a storage locker in town.

Eventually Ardell was arrested, and then the conspiracy unraveled as far as Wendell was concerned. The two were charged under a simple indictment that read as follows:

THE GRAND JURY CHARGES:

From on or about March 1, 1998, to on or about April 7, 1998, in Perry County, within the Southern District of Illinois,

WENDELL NANCE, SR., a/k/a Wendell Simmons, and WENDELL NANCE, JR.,

defendants herein, did conspire and agree with each other and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute a mixture and substance containing cocaine base, commonly known as crack cocaine, a Schedule II, narcotic controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

Notably, although this particular indictment did identify the type of drug the defendants were accused of conspiring to distribute, it said nothing about the drug quantity.

At the sentencing stage, the two principal issues concerned the proper calculation of the quantity of crack cocaine for which Wendell was to be held responsible, see U.S.S.G. sec. 1B1.3 and Application Note 2, para. 6, and the question whether the 2-level offense level increase for possession of a dangerous weapon should be imposed, see U.S.S.G. sec. 2D1.1(b)(1). The court concluded that the amount fell between 50 grams and 150 grams of crack, which gave a starting offense level of 32 under sec. 2D1.1 (c)(4). In doing so, it relied principally on a proffer statement that Ardell gave that estimated the total quantity as somewhere between 50 and 150 grams--an estimate that the presentence report also relied upon. The court also found, based on the testimony about the SKS rifle, that the 2-level enhancement was indeed called for, which gave a final offense level of 34. Wendell's criminal history category was VI; the prescribed Sentencing Guidelines range was therefore 262-327 months; and his final sentence as noted was 262 months to be followed by five years of supervised release.

II

The most important question now before us concerns the effect of Apprendi on Wendell's conviction and sentence. We therefore address it first, and then we turn to the points he has raised concerning only his sentence.

The issue that the Court addressed in Apprendi--whether a particular fact should be regarded as an element of the offense (and hence as something that must be charged in the indictment, submitted

to the jury, and proven by the government beyond a reasonable doubt), or merely as a sentencing factor--was not a new one for the Court, even though it expressed the governing principles in Apprendi with greater clarity and more unequivocally than it had done in prior cases. We reviewed the line of cases that had led up to Apprendi in United States v. Smith, 223 F.3d 554, 563-66 (7th Cir. 2000). Perhaps the most important pre-Apprendi decision for our purposes was Jones v. United States, 526 U.S. 227 (1999), in which the Court held that 18 U.S.C. sec. 2119, the federal carjacking statute, created three separate offenses, not just three sentencing levels for one offense, depending on the harm that the offender inflicted during the course of the crime. Jones was handed down on March 24, 1999; Wendell's trial began on May 3, 1999. Thus, in addition to the earlier decisions from the Supreme Court that were mentioned in Smith, it was clear at the time of Wendell's trial that serious questions could be raised about the proper characterization of aggravating factors under many statutes.

Indeed, as far back as 1997 defendants were arguing to this court that the type of drug that they were charged with distributing in violation of 21 U.S.C. sec. 841 was an element of the offense that had to be proven to the jury beyond a reasonable doubt. In United States v. Edwards, 105 F.3d 1179 (7th Cir. 1997), affirmed, 523 U.S. 511 (1998), we rejected that claim, finding that under the Sentencing Guidelines drug type was a sentencing factor that could be determined by the sentencing judge and needed only to be proven by a preponderance of the evidence. Id. at 1180-81. To similar effect, the defendants in United States v. Jackson, 207 F.3d 910 (7th Cir. 2000), argued that Jones required us to overrule cases like Edwards and to recognize that drug quantities and drug types were both elements of the offense created by 21 U.S.C. sec. 841. See id. at 920-21. We rejected that argument too, but the fact that it was made and that we considered it shows that it was a theory available to defendants even before Apprendi. Wendell, however, did not raise the point in the district court, and this court's decision in Jackson was still practically a year in the future. (Even if Jackson had already been decided, a responsible lawyer could have preserved the right to argue on appeal that Jackson was inconsistent with Jones by raising the issue with the district court.)

Under the circumstances, we conclude that Wendell forfeited his right to argue that the quantity of drugs involved should have been charged in the indictment and proved beyond a reasonable doubt. Our review at this stage is

therefore only for plain error. Under Johnson v. United States, 520 U.S. 461 (1997), we must decide (1) whether there was an error at all, (2) whether it was plain, (3) whether it affected the defendant's substantial rights, and (4) whether (if the first three factors are present) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Id. at 466-67.

Although we have found it unnecessary in a number of cases to decide whether Apprendi effectively overruled our holding in Jackson that drug type and quantity are sentencing factors, see, e.g., United States v. Cavender, 228 F.3d 792 (7th Cir. 2000); Talbott v. Indiana, 226 F.3d 866 (7th Cir. 2000), the question is squarely presented here because Wendell's sentence exceeded the statutory maximum of 20 years found in 21 U.S.C. sec. 841(b)(1)(C). Under the statute, a sentence as long as Wendell's is available only under 21 U.S.C. sec. 841(b)(1)(B)(iii), which permits a sentence of up to 40 years in prison for a violation that involves 5 grams or more of cocaine base, or under 21 U.S.C. sec. 841(b)(1)(A)(iii), which permits even a life sentence if 50 grams or more of cocaine base are involved. (We note for the sake of completeness that Wendell is not arguing that there is a problem with the drug type in his case. First, the indictment specified that the substance was cocaine base. In its instructions to the jury, the court stated that the defendant had been charged with "the offense of conspiracy to distribute cocaine base, commonly known as crack cocaine"; it told the jury that they had to be convinced beyond a reasonable doubt that the defendant was "guilty as charged"; and it instructed the jury that crack cocaine was a Schedule II narcotic controlled substance. Thus, it is clear that everything Apprendi could have required with respect to drug type was done here.)

We are not the first circuit to consider the question whether defendants may be subjected to an enhanced sentence based on drug type and quantity, as provided in sec. 841(b), without charging and proving those facts. More importantly, our sister circuits have thus far unanimously concluded that Apprendi means that they may not. See United States v. Rogers, 228 F.3d 1318, 1326-28 (11th Cir. 2000); United States v. Doggett, 230 F.3d 160 (5th Cir. 2000); United States v. Angle, 230 F.3d 113 (4th Cir. 2000); United States v. Nordby, 225 F.3d 1053, 1056 (9th Cir. 2000); United States v. Rebmann, 226 F.3d 521, 524 (6th Cir. 2000); United States v. Aguayo-Delgado, 220 F.3d 926, 931 (8th Cir. 2000). Furthermore, we note that the Supreme

Court vacated this court's decision in United States v. Whitt, 211 F.3d 1022 (7th Cir. 2000), in which we rejected the defendant's arguments that the amount of drugs for which he was to be held responsible was a matter for the jury. See 211 F.3d at 1026 n.10. See Whitt v. United States, 121 S. Ct. 423 (2000). The Court's order directed us to reconsider Whitt, which had relied on our earlier decision in Jackson, in light of Apprendi. To similar effect, the Court vacated and remanded the judgment of this court in United States v. Hughes, 213 F.3d 323 (7th Cir. 2000), for further consideration in light of Apprendi, even though it is not clear that the defendant there argued that he was entitled to a jury on the quantity issue. See Hughes v. United States, 121 S. Ct. 423 (2000).

We agree with our sister circuits that Apprendi indeed requires us to overrule that part of our Jackson decision that concluded that drug quantities under sec. 841(b) are always a sentencing factor. By the same token, however, as we have indicated in cases like Talbott, 226 F.3d at 869-70, and Hernandez v. United States, 226 F.3d 839, 841-42 (7th Cir. 2000), (albeit in the context of deciding whether an error under Apprendi supports a second or successive petition for a writ of habeas corpus), the Apprendi rule applies only to drug quantities that permit a sentence in excess of the default statutory maximum of twenty years. In this case, Wendell's sentence of 262 months exceeded that statutory maximum. This brought him into the range authorized by sec. 841(b)(1)(B), which provides for a maximum term of imprisonment of 40 years for an offense that (among other things) involves "5 grams or more of a mixture or substance described in clause (ii) [which includes cocaine] which contains cocaine base." Under Apprendi, before Wendell could receive a sentence greater than 20 years but no more than 40 years, the indictment should have charged that he had conspired to distribute 5 grams or more of the cocaine base mixture and that issue should have been submitted to the jury and proven beyond a reasonable doubt by the government.

Granting that the failure to take these steps was an error, we must now decide whether that error requires us to vacate Wendell's sentence and to remand the case for resentencing, or if this is the kind of error subject to harmless error analysis. Two aspects of this case convince us that reversal is not required. First, as we have already noted, Wendell failed to preserve his objection to the indictment and to the fact that the drug quantity issue was not presented to the jury, and thus our review is for plain error. Second, even if it were not plain error, we would

still need to consider whether this was a harmless error under Neder v. United States, 527 U.S. 1 (1999), or if it was a structural error so fundamental that it cannot be left unremedied.

The list in Neder of errors not subject to harmless error analysis is a short one, as the Court itself emphasized. See 527 U.S. at 8 (mentioning complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation at trial, denial of public trial, and defective reasonable doubt instruction as examples of structural errors). The Court there rejected the contention that a jury instruction error that omits an element of the offense falls within that narrow class; it held instead that this was in the broader group of trial errors that may be subjected to harmless error review. In our view, the errors about which Wendell is complaining are analogous to the instructional error the Court considered in Neder. (Indeed, part of Wendell's argument is precisely that the instructions to the jury did not require it to find drug quantity; part of the argument, however, focuses on the indictment.) Whether or not we are applying the stringent plain error screen, the Apprendi error therefore requires us to ask whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Id. at 18.

For plain error purposes, even if we grant that an error was made (as we have found), and we grant that the error was "plain" and affected the defendant's substantial rights (by increasing the sentence by 22 months), we must still decide whether it seriously affected the "fairness, integrity, or public reputation of the judicial proceedings." Johnson v. United States, 520 U.S. at 466-67. If it is clear beyond a reasonable doubt that a properly worded indictment and a properly instructed jury would have found Wendell guilty absent this error, then we cannot say that the error was so serious that it requires us to set aside the judgment.

If this jury was going to convict Wendell at all--which it plainly did--there is simply no way on this record that it could have failed to find that he was conspiring to distribute 5 grams or more of crack cocaine. One does not need to find that the district court's assessment that approximately 102 grams was involved was accurate beyond a reasonable doubt to reach this conclusion. Almost any piece of evidence tending to prove the conspiracy standing alone would have done the job. Ardell, for example, testified that on his first trip to St. Louis he purchased 1/4 ounce (7 grams) and 1/16 ounce (1.75 grams) of

crack. David Jones testified to at least four trips to St. Louis to purchase drugs for the conspiracy, and he said that Ardell bought between 3.5 grams and 7 grams on each trip, for a total of 14 to 28 grams. Agent Dueker's estimates of the amounts the defendants handled included one single occasion where an entire ounce, or 28 grams, was purchased, as well as several other occasions where lesser amounts (still above 5 grams) were involved. Reviewing this record as a whole, we are satisfied that the stringent Neder standard has been met, and that this jury would have found Wendell guilty beyond a reasonable doubt of a crime involving 5 grams or more of crack cocaine. The error did not seriously affect the public integrity, fairness, or reputation of these proceedings, and thus we will not upset the verdict on plain error review.

III

Last, we touch briefly on the sentencing points that formed the original basis of Wendell's appeal. He argues that the district court should not have given him a two point increase in his sentencing level for using a weapon in connection with the conspiracy, as required by U.S.S.G. sec. 2D1.1(b)(1), and that it erred in determining the amount of crack cocaine for which he could be sentenced. We consider both these arguments under the clear error standard of review.

The weapons enhancement is required "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the offense. Here, the government argued that Wendell and his co-conspirators possessed the SKS assault rifle that Ardell had fetched from his grandmother's house in connection with the conspiracy. The district court agreed, and we find no clear error in its decision. Ardell had the weapon in his possession when he and Dexter stopped to purchase crack in St. Louis; Wendell himself brought the gun from Phyllis Woody's trailer to Ledbetter's apartment, the center of the conspiracy's operations; and Dexter testified that Wendell admitted that he wanted to use the weapon to protect himself in case the drug operation got out of hand. This is more than enough evidence to support the district court's finding.

Even without the Apprendi issue, the court's finding that a quantity of 102 grams was involved remains important, as this is what determines the initial offense level for purposes of sec. 2D1.1(c) of the Sentencing Guidelines. The district court was entitled to credit Ardell's proffer statement, in which Ardell estimated the amount to be somewhere between 50 and 150 grams. In addition, there was other evidence supporting

this range. Apart from the proffer statement, Ardell testified that during the course of a five-week period he traveled to St. Louis every two or three days to purchase crack. This amounts to at least 42 grams by itself, if we assume only every three days and the smaller amount of 3.6 grams per trip (instead of 7, as it might have been). Other conspirators made similar trips, as did Wendell himself, which easily took the total over the 50 gram mark. There was no clear error in the court's decision to accept the 102 gram number, which was the one used in the Presentence Report, and to rely on the evidence before it.

For these reasons, we AFFIRM the judgment of the district court.

/1 Because this holding overrules part of our earlier decision in United States v. Jackson, 207 F.3d 910 (7th Cir. 2000) (which was handed down before the Court decided Apprendi), the opinion has been circulated to all judges in regular active service under Circuit Rule 40(e). All have voted not to hear this matter en banc.