**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ruben HUGHES, Defendant–Appellant.**

**No. 99–1269.**

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 2, 2001.

Decided Feb. 27, 2001.

Rehearing Denied April 4, 2001.

Before POSNER, COFFEY, MANION, Circuit Judges.

## ORDER

On May 3, 2000, we issued a decision affirming the life sentence imposed on Defendant–Appellant Ruben Hughes ("Hughes") for conviction on five counts of drug related offenses. *United States v. Hughes*, 213 F.3d 323 (7th Cir.2000). On July 24, 2000, Hughes filed a Petition for Writ of Certiorari with the United States Supreme Court. On November 6, 2000, the Supreme Court granted Hughes' petition, vacated the judgment and remanded to this court "for further consideration in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)." *Hughes v. United States*, 531 U.S. 975, 121 S.Ct. 423, 148 L.Ed.2d 432 (2000). We subsequently ordered the parties to submit Circuit Rule 54 statements,

and those statements have been received.[1] For the following reasons, we reinstate our original judgement with the exception of Hughes' sentencing on Counts Three and Four of the indictment, which we remand for resentencing.

On December 22, 1997, Hughes was indicted by a grand jury and charged with six counts of criminal conduct. Count One alleged that Hughes and co-defendant Joseph Nixon conspired to possess cocaine and cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 846. This count, among other allegations, specifically alleged that on June 17, 1997, Hughes had conspired with Nixon and others to possess and distribute 123.7 grams of crack.

Count Two charged that on January 30, 1997, Hughes intentionally distributed 92.6 grams of crack, in violation of 21 U.S.C. § 841(a)(1). Count Three charged that on January 31, 1997, Hughes intentionally distributed 12.4 grams of cocaine. Count Four charged that on February 25, 1997, Hughes intentionally distributed 121.4 grams of cocaine. Count Five charged that on June 17, 1997, Hughes intentionally distributed 123.7 grams of crack. Count Six charged Hughes with possession of a firearm after having previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

At the conclusion of a jury trial, Hughes was found guilty on all counts.[2] The judge subsequently imposed a life sentence for each of the five drug counts to run concurrently with one another, a ten year concurrent sentence for the firearm conviction, and a $10,000 fine.[3] In connection with sentencing on the drug counts, the court specifically found, based on the testimony presented at trial, that Hughes was responsible for "at least 1.5 kilograms of cocaine base."

The default statutory maximum imprisonment term is thirty years for a defendant such as Hughes, who, after a prior conviction for a drug felony has become final, has been found guilty of a drug offense involving any quantity of a Schedule II controlled substance such as cocaine. 21 U.S.C. §§ 841(b)(1)(C) and 846. However, such a defendant's statutory maximum increases to life imprisonment if the offense involved at least 5 grams of crack or 500 grams of powder cocaine. 21 U.S.C. § 841(b)(1)(B).

■ Under *Apprendi*, prior convictions used for sentencing purposes need not be proven to a jury's satisfaction, but the quantity of drugs must be found beyond a reasonable doubt by the trier of fact when that quantity has the effect of increasing the maximum possible punishment under 21 U.S.C. § 841. *Apprendi*, 120 S.Ct. at 2362–2363; See also *United States v. Nance*, 236 F.3d 820 (7th Cir.2000). We consider our task on remand from the Supreme Court to determine whether Hughes' sentence violated the rule of *Apprendi*, and, if so, what the appropriate remedy should be.

■ In the district court, Hughes did not argue that the quantity of drugs involved was a matter that should have been proven beyond a reasonable doubt and

1. Circuit Rule 54 provides that when the United States Supreme Court remands a case to this court for further proceedings, the parties must file statements of their positions as to the action they believe should be taken by this court on remand.

2. For a complete recitation of the facts adduced at Hughes' trial, see *Hughes*, 213 F.3d at 326–327.

3. On appeal, Hughes did not raise any challenge to the ten year sentence on the firearm conviction.

submitted to the jury for determination, as *Apprendi* now requires. He also did not raise this issue on appeal to this court. His forfeiture of the argument means our review at this stage is for plain error. *Nance*, 236 F.3d 820, 823–824. Under this standard, we must decide whether (1) an error was committed, (2) whether it was plain, (3) whether it affected the defendant's substantial rights, and (4) whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). The fourth element of the plain error review standard is in part an examination of possible prejudice to the defendant. To prevail under the plain error standard, the defendant must show that there is some likelihood that the judgment would have been different had the error not been made. *United States v. Jackson*, 236 F.3d 886 (7th Cir. 2001). If the evidence that Hughes' offense involved at least five grams of crack is "overwhelming," he is not entitled to be retried on the basis of *Apprendi*. *Johnson*, 520 U.S. at 470, 117 S.Ct. 1544; *Jackson*, 236 F.3d at 887. Stated another way, if it is clear that a properly instructed jury would have found Hughes guilty absent an *Apprendi* error, then we cannot say that the error was sufficiently prejudicial to warrant upsetting the judgment and sentence. *Nance*, 236 F.3d at 825–826.

██ We must conclude, as we did in *Nance*, that *Apprendi* requires a finding that the first three prongs of the plain error standard have been met. *Nance*, 236 F.3d at 825. In light of *Apprendi*, it was plain error for the district court not to require the question of drug quantity to be proven beyond a reasonable doubt and submitted to the jury for determination.[4] Further, the error affected Hughes' substantial rights by increasing his statutory maximum term of imprisonment from 30 years to life. *Nance*, 236 F.3d 825–826.

We conclude, however, that Hughes' situation fails to meet the final prong of the plain error standard with respect to his sentencing on Counts One, Two and Five of the indictment (the Counts related to the sale of crack). We have no difficulty in concluding that "overwhelming" evidence was presented that Hughes had distributed or conspired to distribute at least five grams of crack. We find the following observation from *Nance* to be equally applicable to Hughes' case:

> If this jury was going to convict Wendell at all—which it plainly did—there is simply no way on this record that it could have failed to find that he was conspiring to distribute 5 grams or more of crack cocaine.

*Nance*, 236 F.3d at 826.

We need not go over all the relevant testimony taken at trial to reach this conclusion. This is not a case in which the evidence made it a "close call" as to whether Hughes was responsible for the five grams of crack required to validly sentence him to life in prison. Rather, the amount of crack attributable to Hughes is so far in excess of the required five grams that a recitation of only several points is needed to demonstrate the overwhelming nature of the evidence.

Testimony was taken from two of Hughes' confederates in his drug operation, Joseph Nixon and Jeffrey Lindsay. Nixon testified that between January and

---

**4.** This is true despite the fact that Hughes was sentenced prior to the time *Apprendi* was decided. Where there is a "change" in the law while a case is still on direct appeal, the state of the law at the time of appellate decision is to be considered for purposes of plain error review. *Johnson*, 520 U.S. at 467–468, 117 S.Ct. 1544.

June 1997, he bagged, sold and delivered in excess of five kilograms of crack for Hughes. Lindsay testified Hughes would give Lindsay between six and eight grams of crack for every kilogram Lindsay "cooked" for Hughes. In the summer of 1996 alone, Lindsay cooked an estimated total of six to ten kilograms of crack for Hughes.

Also testifying against Hughes was a former customer, Kendall Woods. After Woods was arrested for drug possession and aggravated battery, he agreed to cooperate with law enforcement authorities in the investigation of Hughes. Between January and June of 1997, Woods made four drug buys from Hughes that were monitored by law enforcement agents. On January 30 and 31, 1997, the first two buys involved a total of 101.6 grams of crack and 127.1 grams of powder cocaine. The third buy occurred on February 25, 1997, and involved 127.1 grams of powder cocaine. The fourth buy occurred on June 17, 1997, and involved 125.7 grams of crack.

In addition, at trial Hughes stipulated that a qualified DEA chemist would testify that the substances at issue in Count Two of the indictment consisted of approximately 125.7 grams of crack. Hughes further stipulated that the chemist would testify that the substances at issue in Count Five consisted of approximately 125.7 grams of crack.

Based on the evidence at trial, and the fact that the jury convicted Hughes of all charges, it is inconceivable that a properly instructed jury could have failed to find that the quantity of crack for which Hughes was responsible exceeded the minimum five grams necessary for the imposition of a life sentence. Evidence that Hughes conspired to distribute, and did distribute, in excess of five grams of crack was so overwhelming that any error under *Apprendi* was harmless, and affirming Hughes' sentence on the crack related charges (Counts One, Two and Five) would not be a miscarriage of justice. See *Jackson*, 236 F.3d at 887.

Hughes' sentence for conviction on Counts Three and Four of the indictment present a different problem unrelated to *Apprendi*. In its Rule 54 statement, the government for the first time alerts us to its position that the life sentences imposed for conviction on Counts Three and Four of the indictment (involving the sale of powered cocaine only) exceeded the statutory maximum found in 21 U.S.C. §§ 841(b)(1)(C) and 841(b)(1)(B). Our review of the record reveals that Hughes did not raise this issue at trial, on direct appeal, in his Petition for Certiorari, or even now on remand. Nonetheless, Fed. R.Crim.P. 52(b) permits us to notice plain error even when it has not been brought to the attention of the court. The government's Rule 54 statement does not elaborate, but it would appear from the state of the record before us that the amount of powder cocaine charged in Counts Three and Four of the indictment—12.4 grams and 121.4 grams, respectively—are not sufficient to meet the 500 gram threshold necessary for imposition of a life sentence pursuant to 21 U.S.C. § 841(b)(1)(B). We therefore vacate the sentence imposed for Counts Three and Four and remand this case to the district court for resentencing on those counts only. In all other respects, the judgment of the district is again affirmed and our original judgment reinstated.