In the

 United States Court of Appeals
 for the Seventh Circuit
 ____________________
No. 21-1637
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,
 v.

AVERY SMARTT,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court
 for the Southern District of Illinois.
 No. 18-CR-30138-NJR-01 — Nancy J. Rosenstengel, Chief Judge.
 ____________________

 ARGUED AUGUST 3, 2022 — DECIDED JANUARY 24, 2023
 ____________________

 Before SYKES, Chief Judge, and SCUDDER and ST. EVE,
Circuit Judges.
 SYKES, Chief Judge. Avery Smartt had a sexual relationship
with a 15-year-old runaway and traveled around the country
with her as he worked as an over-the-road trucker. Along
the way he took sexually explicit photos of her. When she
got pregnant, he returned her to her hometown of Alton,
Illinois. The FBI started investigating when the girl—
identified as S.S. in the district court and here—sought
2 No. 21-1637

medical care at an Alton hospital during the fourth month of
her pregnancy. Agents obtained a warrant to search Smartt’s
home in East St. Louis, where they seized electronic devices
containing sexually explicit photos of S.S. DNA tests con-
firmed that Smartt is the father of her child.
 A federal grand jury indicted Smartt for producing child
pornography. A charge of witness tampering was added
after Smartt sent letters addressed to S.S. and third parties
trying to influence her testimony. A jury found him guilty
on both counts, and the district judge imposed a long prison
term.
 On appeal Smartt raises two claims of error related to
remarks by the judge during trial. S.S. was the first witness
to testify. Just before she took the stand, the judge explained
to the jury that the government’s first witness was the
victim, who would be referred to only by her initials. Smartt
claims that it was error for the judge to refer to S.S. as “the
victim.” The second challenged remark came at the end of
S.S.’s testimony. During her direct examination, she identi-
fied 14 sexually explicit photos Smartt had taken of her, but
the prosecutor moved to admit only one. The judge asked
the prosecutor if she planned to admit the other photos
through another witness. The prosecutor said yes. The judge
replied: “All right. Just making sure.” Smartt contends that
the “just making sure” comment signaled pro-government
bias to the jury.
 Because Smartt did not object to either statement at trial,
he must clear the high hurdle of plain-error review. He
barely acknowledges this standard, mentioning it only in
passing in his reply brief. And he does not come close to
No. 21-1637 3

carrying his burden. Indeed, his arguments are frivolous. We
affirm.
 I. Background
 In April 2017 the Illinois Department of Children and
Family Services notified the FBI that S.S., then 15 years old
and four months pregnant, was at the hospital in Alton
reporting that she had traveled across the country with a 38-
year-old truck driver and was pregnant with his child. The
FBI opened an investigation, and Special Agent Tyrone Forte
interviewed S.S. with other agents. She identified the truck
driver as Avery Smartt and said that she met him in East
St. Louis in the early fall of 2016 after she ran away from
home. They had a sexual relationship, and she lived with
him for several months. She said that she had accompanied
Smartt on his trips around the country as an over-the-road
trucker and that Smartt had taken nude photos of her during
these travels. When she discovered she was pregnant, Smartt
took her back to Alton.
 S.S. described the mobile devices—phones and tablets—
that Smartt used to take the photos. Based on the interview
with S.S. and additional investigation, the agents obtained a
search warrant for Smartt’s home, where they seized his
digital devices. Forensic searches of the devices revealed text
messages between Smartt and S.S and also photos of S.S.,
some depicting her engaging in sex acts. A federal grand
jury in the Southern District of Illinois indicted Smartt for
producing child pornography, 18 U.S.C. § 2251(a).
 While in jail pending trial, Smartt attempted to mail let-
ters to friends urging them to contact S.S. to persuade her to
recant her statements about their relationship or just “disap-
4 No. 21-1637

pear” before trial. One of these mailings included a letter
directed to S.S. urging her to recant. The government re-
turned to the grand jury seeking a superseding indictment
adding a charge of attempted witness tampering, id.
§ 1512(b)(1).
 The grand jury obliged, and the two-count case proceed-
ed to trial. As is customary, before opening statements the
judge instructed the jurors that they should “not infer or
conclude from any ruling or other comment I may make that
I have any opinions on the merits of the case favoring one
side or the other.” She amplified the point:
 THE COURT: The law of the United States
 permits the [j]udge to comment on the evi-
 dence in the case during the trial or in instruct-
 ing the jury. Such comments are only
 expressions of the [j]udge’s opinions of the
 facts[,] and the jury may disregard them entire-
 ly since the jurors are the sole judges of the
 facts.
 After brief opening statements, the government called
S.S. as its first witness. While the exhibits were being readied
and the podium sanitized (the trial took place in the first
year of the COVID-19 pandemic), the judge told the jurors
what would happen next:
 THE COURT: So, while they are preparing
 that, this is the victim in the case that will be
 testifying. We are, in order to protect her pri-
 vacy, just going to refer to her by initials. And,
 then, again, the nature of some of the evidence
 is obviously very sensitive, so instead of show-
No. 21-1637 5

 ing some things on the overhead or even on
 the monitors, the [g]overnment will have a—
 [i]t’s a folder, right, … for each juror?
 THE GOVERNMENT: Yes, Your Honor. That’s
 correct, Your Honor.
 THE COURT: All right. And then we will col-
 lect those whenever we are finished.
 THE GOVERNMENT: And, Your Honor, just
 for the record, we won’t distribute those fold-
 ers until a different witness testifies.
 THE COURT: Oh, I’m sorry. Okay, so at a dif-
 ferent time. But, at some point you [the jurors]
 will get an individual folder [of exhibits].
 S.S. testified that she met Smartt in East St. Louis some-
time around Labor Day of 2016 and they began a sexual
relationship almost immediately. He was 38 at the time, and
she had just turned 15 (she was born in August 2001). She
admitted that she initially lied to Smartt about her age: she
told him she was 18. S.S testified that she lived with Smartt
at his home in East St. Louis and often accompanied him as
he traveled around the country as an over-the-road trucker.
On some of these trips, she said, Smartt took photos of her
engaging in sex acts.
 Continuing her testimony, S.S. explained that sometime
in January 2017, she discovered that she was pregnant with
Smartt’s child. At first she was too scared to say anything to
him. At some point during a long road trip to California, she
told him that she was pregnant and came clean about her
age. They eventually returned to East St. Louis, and he
packed up her belongings and took her back to Alton.
6 No. 21-1637

 During her direct examination, S.S. identified 14 sexually
explicit photos that Smartt had taken of her. The prosecutor
moved to admit one of these photos into evidence but not
the others. When S.S. concluded her testimony, the judge
dismissed her and then turned to the prosecutor with a
question about the exhibits:
 THE COURT: Now, you did not move for the
 admission of anything except [Exhibit] 8. Are
 you going to do that through a different wit-
 ness?
 THE GOVERNMENT: That’s correct, Judge.
 THE COURT: All right. Just making sure.
 The second witness was an FBI digital expert who ex-
plained how the images were extracted from Smartt’s mobile
devices. Next up was Agent Forte, who testified about the
interview with S.S., the text messages Smartt sent to her, the
letters Smartt sent from jail, and the photographs obtained
from Smartt’s devices depicting his sexual relationship with
S.S. The government also called two DNA experts: the first
laid the foundation for the paternity test results, including
the chain of custody for the DNA samples; the second
testified that according to DNA analysis, Smartt is the father
of S.S.’s child to a 99.9999% probability. Finally, the prosecu-
tor called two jail officials to testify about Smartt’s letters.
The government rested, and the defense called no witnesses.
 Smartt’s closing argument focused on the government’s
burden to prove every element of each crime beyond a
reasonable doubt, with specific emphasis on the requirement
to prove that S.S. was a minor—under 18 years of age—at
the time the photos were taken, an essential element of the
No. 21-1637 7

child-pornography offense. Defense counsel pointed out that
the government relied entirely on S.S.’s testimony about her
age and did not produce any corroborating documentary
evidence such as a birth certificate or driver’s license.
 The jury found Smartt guilty on both counts. The judge
sentenced him to concurrent prison terms of 300 months on
the child-pornography count and 240 months on the
witness-tampering count.
 II. Discussion
 Smartt argues that the judge committed reversible error
by referring to S.S. as “the victim” in front of the jury and by
saying that she was “just making sure” that the prosecutor
planned to move the admission of all 14 sexually explicit
photos at some point during the trial. These remarks, he
contends, signaled pro-government bias.
 Smartt did not object to either statement, which forfeits
plenary review of these claims on appeal. Our review is
therefore limited to correcting plain error. FED. R. CRIM.
P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993);
United States v. Chavez, 12 F.4th 716, 728 (7th Cir. 2021).
Plain-error review is a “stringent” legal standard. United
States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000). Smartt must
establish that (1) an error occurred; (2) the error was
“plain”—i.e., obvious or clear; (3) the error affected his
substantial rights; and (4) the error seriously affected the
fairness, integrity, or public reputation of the proceedings.
Chavez, 12 F.4th at 728.
 Smartt must carry his burden on all four of these ele-
ments. Even errors that are obvious or clear do not warrant
reversal unless the defendant can show an effect on his
8 No. 21-1637

substantial rights—that is, a “reasonable probability that, but
for the error, the outcome of the proceeding would have
been different.” Molina-Martinez v. United States, 578 U.S.
189, 194 (2016) (quotation marks omitted). And even if the
defendant satisfies his burden on the first three elements, the
decision to correct a forfeited error remains discretionary;
our exercise of discretion is reserved for errors that seriously
affected the fairness, integrity, or reputation of the proceed-
ings. Puckett v. United States, 556 U.S. 129, 135 (2009). Satisfy-
ing all four conditions “is difficult, as it should be.” Id.
(quotation marks omitted).
 Smartt’s claims fail at the first step. Referring to S.S. as
“the victim” was not an error at all, much less a plain error.
That she was the victim in the case would become obvious in
the first minutes of her testimony, and the jury needed to
know why she would be referred to by her initials. The
judge simply accurately identified her relationship to the
case and explained why her full name would not be used.
 Even if it was error (it was not), the remark caused no
harm to the defense. The judge had just instructed the jurors
not to infer from any of her rulings or comments that she
favored either side. She further instructed the jurors to
“disregard … entirely” any comment she might make about
the evidence and that they, the jurors, “are the sole judges of
the facts.” The law presumes that jurors follow the judge’s
instructions. United States v. Warner, 498 F.3d 666, 683 (7th
Cir. 2007). Smartt neither acknowledges this presumption
nor offers any argument for overcoming it.
 Moreover, the remark was fleeting—the judge referred to
S.S. as “the victim” only once—and it was utterly inconse-
quential given the mountain of evidence of Smartt’s guilt.
No. 21-1637 9

We’ve summarized the trial record above and see no need
for repetition. With such extensive evidence of guilt, there is
not the remotest possibility that Smartt would have been
acquitted had the judge not referred to S.S. as the victim. See
United States v. Barnhart, 599 F.3d 737, 746 (7th Cir. 2010)
(holding that the judge’s improper questioning of a witness
did not prejudice the defendant under the plain-error stand-
ard because the evidence pointed strongly to the defendant’s
guilt).
 Nor was the “just making sure” comment an error. The
judge had just heard S.S. identify and testify about 14 sexual-
ly explicit photographs that were the subject of the child-
pornography charge, but the prosecutor had moved the
admission of only one. The judge’s comment reflected a
reasonable effort to manage the flow of trial evidence rather
than a pro-government signal to the jury. Judges have wide
discretion to control the mode and order of the presentation
of evidence at trial and even to question witnesses to clarify
testimony or otherwise assist the jury’s understanding of the
evidence. See FED. R. EVID. 611(a), 614(b); see also Barnhart,
599 F.3d at 743; United States v. Winbush, 580 F.3d 503, 508
(7th Cir. 2009); United States v. Washington, 417 F.3d 780, 783–
84 (7th Cir. 2005). The judge’s comment was well within this
broad discretion. Indeed, it was entirely unremarkable;
nothing about it conveyed a thumb on the scale in favor of
the prosecution.
 And for the reasons we’ve already explained, the “just
making sure” comment had no effect on the outcome of the
trial given the overwhelming evidence of guilt. There is no
possibility that Smartt would have been acquitted but for
this unobjectionable comment from the judge.
10 No. 21-1637

 We therefore affirm the judgment. As our analysis makes
clear, Smartt’s arguments are not simply meritless; they are
frivolous. This was a counseled criminal appeal, briefed and
argued by an attorney appointed pursuant to the Criminal
Justice Act, 18 U.S.C. § 3006A. By separate order, we address
counsel’s pursuit of frivolous claims in this appeal.
 AFFIRMED