**UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant,**

**v.**

**Frederick R. BRADLEY, also known as Ricky George, Defendant–Appellant/Cross–Appellee.**

**Nos. 98–2525, 98–2783.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1998.

Decided Jan. 28, 1999.

Suzanne M. Garrison (argued), Office of the United States Attorney, Fairview Heights, IL, for Plaintiff–Appellee.

Grant J. Shostak (argued), Moline & Shostak, St. Louis, MO, for Defendant–Appellant.

Before BAUER, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

There's truth to the old adage that it's best to leave sleeping dogs lie. And so it is that defendants, who benefit from favorable calls under the federal sentencing guidelines, should think more than twice about appealing their cases when their appeals have little likelihood of success. This is so because a defendant's appeal may draw a guidelines cross-appeal when the government would not (probably not, at least) appeal on its own in the first instance.[1] This is such a case. The defendant's appeal is meritless, and the government—which we can't imagine would have appealed independently—wins its cross-appeal. So our defendant will finish the day worse off than he was before it started. A word to the wise....

A jury found Frederick Bradley guilty on six counts of distributing crack cocaine. All six counts involve substantially the same scenario. In each, an undercover officer (Jerry Simon of the East St. Louis, Illinois, police department) purchased crack from Bradley through an informant. The transactions occurred over a period of a month, and the quo for the cocaine quid was $300, $600, $1,500, $1,500, $550, and $400. In the last deal, Bradley added a gun to the dope he sold to Simon.

Bradley's appeal rests on two claims: insufficiency of the evidence and a failure by the government to prove that crack, as opposed to powder, cocaine was sold.

■ An insufficiency of the evidence argument is an uphill fight all the way, *United States v. Johnson*, 152 F.3d 618 (7th Cir. 1998), and this one doesn't get out of the starting blocks. The challenge is nothing more than nit-picking over minor discrepancies in the testimony (i.e., did Agent Simon meet surveillance officers at police headquarters or at a Wal–Mart store before going to the site of the last sale?). Bradley points to a number of these minor inconsistencies and concludes his argument by saying:

The testimony given by the officers and informant simply does not fit. Almost all of the details are wrong. Days and meeting places vary, and even who was driving the car, informant or Simon, is not clear. This testimony came from witnesses who allegedly were there. Surveillance team members should at the very least pay attention to detail. After all, it is their job.

With such discrepancies, no rational trier of fact could have found the elements of distribution of cocaine base beyond a reasonable doubt.

We disagree. At best, arguments of minor spats like these are only good (if good at all) in front of juries. They will never carry the day in a court of appeals. The evidence was clearly sufficient to prove Bradley guilty on all counts.

■ Bradley's other claim is that the district judge committed clear error when he concluded that five of the six sales involved cocaine base in the form of what is commonly known as crack. Findings of fact are clearly erroneous only if they are "without foundation in the evidence." *United States v. Monem*, 104 F.3d 905, 910 (7th Cir.1997).

■ We have, in other cases—and *United States v. Abdul*, 122 F.3d 477 (7th Cir.1997), is as good an example as any—discussed the 1993 clarifying amendments to sentencing guideline § 2D1.1(c) relating to "crack" as a form of cocaine base. We need not reiterate that discussion here. Suffice to say that the government must prove, by a preponderance of evidence, that "crack," a street name for a form of cocaine base, "*usually* prepared by processing cocaine hydrochloride and sodium bicarbonate, and *usually* appearing in a lumpy, rocklike form" was sold. § 2D1.1(c) (emphasis added). The "issue is whether the drug ... 'crack' as the term is generally understood" was sold. *Abdul*, 122 F.3d at 479.

■ The government more than met its burden in this case. The detailed testimony of Agent Simon and the informant about

---

**1.** *See United States v. Zaragoza*, 123 F.3d 472 (7th Cir.1997), and *United States v. Farouil*, 124 F.3d 838 (7th Cir.1997), as but two recent examples of ill-advised appeals inviting government guideline cross-appeals.

**596**

what they said and did and what Bradley himself said during the deals left no doubt that crack was the drug involved in the sales. This just makes common sense because those who smoke, buy, or sell this stuff are the real experts on what is crack. Their testimony, by itself, met the government's burden. On top of that, scientific lab reports said the substances sold were "cocaine base," and an experienced DEA agent testified that when an analyzed substance is "crack," the chemist's report calls it "cocaine base." *See United ed States v. Wade,* 114 F.3d 103, 104 (7th Cir.1997).

This brings us to the government's cross-appeal. At sentencing, the district judge concluded that one of the six transactions (i.e., one of the six counts) involved the non-crack form of cocaine base. This finding lopped 14.8 grams off Bradley's relevant conduct, and that reduced his base offense by two levels. This finding, unfortunately for Bradley, is not supportable.

Throughout the trial, Agent Simon and the informant described the drug in each transaction as crack. The DEA agent identified all the drugs as crack. The laboratory reports indicate that each of the six substances was cocaine base. Each substance, the evidence showed, was "hard and rock-like," the kind of drug typically ingested by smoking. Bradley himself offered no evidence which indicated that the PSR incorrectly described the drugs he delivered as cocaine base in the form of crack. There was no evidence of any sort that Bradley ever distributed coca paste or any other exotic form of cocaine base. Nothing in the record indicated that the rejected 14.8 grams differed in any way from the drugs sold in the other five sales, and those drugs were found to be crack. Treating one of these sold substances as a non-crack form of cocaine base, particularly in light of the testimony (by the DEA agent) that such a substance was not available for sale in the area during the relevant time period, was clear error.

For these reasons, the judgment of conviction is affirmed but the sentence is vacated

and the case remanded for resentencing consistent with this opinion.