In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2609

United States of America,

Plaintiff-Appellee,

v.

Reggie Booker,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 93--Lynn Adelman, Judge.

Argued June 6, 2001--Decided August 14, 2001

   Before Fairchild, Bauer, and Posner,
Circuit Judges.

   Bauer, Circuit Judge.  A jury convicted
Reggie Booker of one count of conspiring
to distribute and to possess with the
intent to distribute more than 50 grams
of cocaine base known as "crack" in
violation of 21 U.S.C. sec. 841(a)(1) and
sec. 846 and one count of knowingly and
intentionally dis-tributing and
possessing with intent to distribute
cocaine base known as "crack" in
violation of 21 U.S.C. sec. 841(a)(1) and
18 U.S.C. sec. 2. At the sentencing
hearing, the district judge found by a
preponderance of the evidence that the
drugs involved in Booker's crimes were
crack, and applied the Sentencing
Guidelines accordingly. The judge then
sentenced Booker to two concurrent 292-
month sentences under the enhanced
sentencing provisions of 21 U.S.C. sec.
841(b)(1)(A). Booker appeals his
sentence, arguing that it does not comply
with Apprendi and contending that
thedistrict judge erred when he
determined that the drugs at the heart of
Booker's crimes were crack. We affirm.

I.  Background

   Racine County law enforcement suspected
that Booker was involved in a drug
distribution conspiracy. It began

investigating and, through an informant, arranged to make crack cocaine purchases from Booker. Once the deal was negotiated, Booker directed Tyrone McKinney to deliver his drugs, and the transactions frequently occurred in front of the Prospect Street apartment Booker rented. Working undercover, Detective Keith Thrower participated in two particularly large buys. On March 30, 1999 he bought 28 grams of cocaine base from Booker and McKinney and on April 5, 1999 he purchased another 81.7 grams. As part of the same investigation, another undercover officer also purchased 4 ounces (113.4 grams) of cocaine base from Booker's co-conspirator, Montae Hudson.

   Police arrested Booker, McKinney, and Hudson. McKinney and Hudson cooperated with the police. Based on information McKinney provided, police retrieved 53.2 grams of cocaine base along with some powder cocaine and marijuana from Booker's Prospect Street apartment. McKinney also described to police how Booker "cooked" crack by microwaving cocaine powder and baking soda. Hudson explained that he acted as a middle man in Booker's conspiracy, facilitating deals between Booker and buyers interested in cocaine base. Hudson recounted that multiple times between April 1999 and his arrest one month later, he bought cocaine base as well as powder cocaine to cook into crack. He testified that he purchased a total of 22 ounces (623.7 grams) of cocaine base from Booker.

   The government indicted Booker on one count of conspiracy to distribute cocaine base and one count of distributing cocaine base. A jury found Booker guilty on both counts. The government then requested a sentencing enhancement based on Booker's prior felony drug conviction. Using 21 U.S.C. sec. 841(b)(1)(A)(iii), a sentence enhancement for crimes involving more than 50 grams of cocaine base, the judge sentenced Booker to two 292-month sentences, to run concurrently. Booker now appeals his sentence arguing that the district judge did not fulfill the Apprendi requirements of treating the drug quantity and drug type as elements of Booker's crimes and submitting the factual questions to the jury, and that he erred when he found at the sentencing hearing, by a preponderance of the

evidence, that the drug involved in Booker's crimes was crack cocaine.

## II. Discussion

### A. Apprendi

Apprendi v. New Jersey holds that factors which subject a defendant to an enhanced penalty, except prior felony convictions, are elements of the crime that must be charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. See 120 S. Ct. 2348, 2362-63 (2000); United States v. Westmoreland, 240 F.3d 618, 631-32 (7th Cir. 2001); United States v. Nance, 236 F.3d 820, 824-25 (7th Cir. 2000). At first glance, Booker's sentence appears to violate Apprendi because the judge did not submit the issues of drug quantity and type to the jury as elements of the crimes, yet he sentenced Booker in excess of the 20-year statutory maximum prescribed by 21 U.S.C. sec. 841(b)(1)(C). Closer scrutiny, however, shows that there is no Apprendi violation.

21 U.S.C. sec. 841(b)(1)(C), which establishes the 20-year statutory maximum penalty for Booker's crimes, creates an exception to the 20-year ceiling:

If any person commits [a violation punishable under sec. 841(b)(1)(C)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . .

The government presented evidence that Booker was convicted of a felony drug offense in 1992, and Apprendi specifically exempts prior felonies from its proof requirements. See 120 S. Ct. at 2362-63. Because Booker's prior felony conviction properly subjected him to sentences of up to 30 years and neither of Booker's 292-month sentences exceeds 30 years, there is no Apprendi violation.

Even if Booker's sentences were in derogation of Apprendi we would affirm. We review the district judge's actions for plain error because Booker raises the Apprendi issue for the first time on appeal. See Fed. R. Crim. P. 52(b); Nance, 236 F.3d at 825. A mistake constitutes

plain error if there is (1) an error (2) that was clear and obvious and which (3) affected the substantial rights of the defendant. See Johnson v. United States, 520 U.S. 461, 466-67 (1997). If thesefactors are met, we may, in our discretion, reverse the district court if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 467(quotations omitted). For purposes of this argument, we will assume that (1) the district court committed errors regarding both the drug quantity and type, (2) these errors were clear, given the law of Apprendi, and (3) these errors prejudiced Booker's substantial rights by subjecting him to a sentence longer than the statutory maximum. Booker fails to satisfy the fourth factor of the plain error test because the district court's purported mistakes were harmless. An error is harmless when it is clear beyond a reasonable doubt that a reasonable jury would have found the defendant guilty absent the error. See Neder v. United States, 527 U.S. 1, 7 (1999); Nance, 236 F.3d at 825 (using the plain error standard to evaluate an Apprendi issue.).

1.  Drug Quantity

   We turn first to Booker's drug quantity argument. In sentencing Booker, the district judge proceeded under 21 U.S.C. sec. 841(b)(1)(A)(iii), which is applicable to crimes involving more than 50 grams of cocaine base. This statute allows the judge to levy sentences of not less than 10 years nor more than life imprisonment. The judge's choice of sentencing provision was entirely appropriate, however, he also could have sentenced Booker to 292 months per count using 21 U.S.C. sec. 841(b)(1)(B)(iii) which authorizes a sentence of not more than 40 years for crimes involving more than 5 grams of cocaine base. See, e.g., United States v. Robinson, 250 F.3d 527, 530 (7th Cir. 2001); United States v. Patterson, 241 F.3d 912, 914 (7th Cir. 2001). All of the evidence presented at trial linked Booker with amounts of crack cocaine in excess of 5 grams. With regard to the conspiracy charge, Hudson testified that he purchased a total of 623.7 grams (22 ounces) of cocaine base from Booker. McKinney estimated that he saw Booker cook a total of 2 kilograms of crack cocaine. As to the possession with

intent to distribute charge, Detective Thrower in his first controlled buy purchased 28 grams of cocaine base, and the amount jumped to 81.7 grams in the second buy. Further, after Booker's arrest, police seized 53.2 grams of cocaine base from the apartment Booker rented. It is inconceivable that a reasonable jury could have convicted Booker without finding that his crimes involved more than 5 grams of the cocaine base. See, e.g., Nance, 236 F.3d at 826. We are also confident, given that the police actually recovered amounts in excess of 50 grams, that a jury which convicted Booker would have been compelled to find that Booker's crimes involved in excess of 50 grams of crack cocaine. See Robinson, 250 F.3d at 531; United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2000). There is no plain error with regard to drug quantity.

2.  Drug Type

   Next, we address Booker's argument regarding the drug type. 21 U.S.C. 841(b)(1)(A)(iii) prescribes enhanced penalties for crimes involving "cocaine base." In the context of 21 U.S.C. sec. 841 and the Sentencing Guidelines, "cocaine base" means "crack cocaine." See U.S.S.G. sec. 2D.1.1; United States v. Earnest, 185 F.3d 808, 810 (7th Cir. 1999). However, scientifically, "cocaine base" includes other forms of the drug besides crack cocaine. Booker concedes that his drugs fall into the scientific category of cocaine base and are not raw cocaine, but argues that the government failed to prove beyond a reasonable doubt that Booker's cocaine base was indeed crack. Booker contends that this failure to prove drug type violates Apprendi because a jury could have found that his drugs were not crack cocaine. Booker challenges the government's evidence on two grounds. He first points out that the government's chemical evidence identified his drugs merely as cocaine base, not more specifically as crack cocaine. Second, Booker challenges the visual identifications of the drugs as crack because he believes that visual examination cannot reliably distinguish crack from other forms of cocaine.

   Booker is correct that the government's chemical evaluations identified the drugs generally as cocaine base and not as a

specific type of cocaine. But we are aware of only two substances that are classified as cocaine base: crack cocaine and unprocessed, raw cocaine. Significantly, the tests run on Booker's drugs found non-naturally occurring chemical additives in the cocaine base, showing that the cocaine was not raw, but had been processed. Booker presents no other alternative type of cocaine base besides crack that the drugs could be. By process of elimination, these chemical tests show the drugs to be crack.

Even if the chemical test is inconclusive, such tests are not the only way to prove drug identity. We have held that the identity of a drug may be proven by evidence besides chemical tests, such as visual identification by persons familiar with the drug. See United States v. Linton, 235 F.3d 328, 329-30 (7th Cir. 2000). The government presented overwhelming proof that the drugs were crack. First, De-tective Thrower, an undercover officer, communicated to Booker that he wanted to purchase crack cocaine. When he received the drugs, Thrower believed them to be crack cocaine. The analyst from the Wisconsin Crime Lab described the drugs as off-white, rock-like chunks and opined that they were crack. Further, two of Booker's co-conspirators who turned state's evidence, Hudson and McKinney, testified that Booker was dealing in crack cocaine. McKinney testified that he saw Booker make crack cocaine by "cooking" cocaine powder with water and baking soda. Also, Booker paid McKinney with "left over scraps" of the drugs he cooked and sold, and McKinney, a crack addict, smoked these drugs as crack cocaine. Hudson purchased crack from Booker and sold it to others as crack cocaine. We have held that "those who smoke, buy or sell [crack cocaine] are the real experts." United States v. Bradley, 165 F.3d 594, 596 (7th Cir. 1999). There is no plain error with regard to the identity of the drug because a reasonable jury would be compelled to find Booker's drugs were crack.


B.  Crack Guidelines

Booker argues that the judge erred when he calculated Booker's sentence using the crack category of the Sentencing

Guidelines because the government failed to prove by the preponderance of the evidence that Booker's drugs were crack cocaine. Because we held that a reasonable jury would be compelled to find beyond a reasonable doubt that Booker's drugs were crack cocaine, we decline to address Booker's argument further. See Earnest, 185 F.3d at 813 (holding that a district court properly relied on the testimony of "witness after witness" that the drugs at issue were crack, despite the government expert's less precise conclusion that the drugs were "cocaine base."). The judge did not err when he calculated Booker's base level offense according to the crack category of the Sentencing Guidelines.

AFFIRMED.