## In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 00-1214, 00-1273 & 00-1345

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

REINALDO A. AROCHO, MARC FLORES and JESSE COLON,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 98 CR 103—**James T. Moody**, *Judge.*

ARGUED JUNE 6, 2002—DECIDED SEPTEMBER 10, 2002

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Reinaldo Arocho, Marc Flores and Jesse Colon were convicted of conspiring to distribute crack cocaine, as well as other drug-related offenses. The defendants were sentenced to terms of imprisonment ranging from 240 months to life in prison. The defendants appeal their convictions and sentences. We affirm.

## I.

In July 1998, Reinaldo A. Arocho, Marc Flores, Jesse Colon, Dennis Allen and John C. Spann[1] were arrested pursuant to a criminal complaint alleging various drug-related offenses. A grand jury subsequently returned an eight-count superseding indictment charging the five with various criminal violations. Three counts specifically named Colon: Count 3 charged Colon with possession with intent to distribute 50 grams or more of crack cocaine on January 29, 1998, in violation of 21 U.S.C. § 841(a)(1); Count 4 charged Colon with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); and Count 6 charged Colon with carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Four counts named all five co-defendants: Count 1 charged conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846; Count 2 charged that they maintained a crack house, in violation of 21 U.S.C. § 856(a)(1); Count 5 charged possession with intent to distribute five grams or more of crack cocaine on July 2, 1998, in violation of 21 U.S.C. § 841(a)(1); and Count 7 charged them with carrying a firearm during the drug trafficking offense of possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 924(c). Finally, Count 8 charged Arocho and Colon with attempting to corruptly influence the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1). This charge stemmed from Arocho and Colon's alleged attempt to persuade Dennis Allen to sign a false statement about the case after he had begun cooperating with the government.

---

[1] This case involves only Flores, Colon and Arocho's appeals.

Arocho, Flores and Colon (hereinafter jointly referred to as "appellants") pleaded not guilty and proceeded to trial.[2] Allen, pursuant to a plea agreement with the government, pleaded guilty to Count 1, and the remaining counts were dismissed. Allen then testified at the trial against his former co-conspirators. At trial, the jury heard Allen testify that Colon sold crack out of a house located at 1105 Clay Street in Gary, Indiana. Other witnesses (who were former "customers" of the appellants) corroborated Allen's assertion by testifying that they purchased crack from Colon, and sometimes other individuals, at the 1105 Clay Street location. The jury heard additional testimony from Allen and others that Colon cooked the crack, cut it into rocks, packaged it, and that if the operation ran out of inventory, Colon replenished the crack supply. The testimony also established that Colon was in charge of the drug operations at 1105 Clay Street. The witnesses further testified that there were several firearms present at the home during the drug transactions, and that Colon had used a firearm to threaten one of his neighbors.

In addition to this testimony, the jury heard from Chad Pante, a former customer of the appellants, who later became an informant for the Lake County Drug Task Force ("Task Force"). As an informant, Pante made four controlled purchases of crack from 1105 Clay Street, the last of which he made directly from Colon. After the

---

[2] The case against Spann was severed after the district court determined that he suffered from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him and unable to assist in his defense. The district court ordered Spann hospitalized and provided treatment after which time the court would determine whether Spann had attained the capacity necessary for trial to proceed.

controlled purchases, the Task Force obtained a search warrant for 1105 Clay Street. On January 29, 1998, the Task Force executed the search warrant, recovering 44.7 grams of heroin in a dresser, fourteen bags of crack cocaine in a leather jacket in a bedroom closet, and an electronic scale capable of measuring hundredths of a gram. The officers also recovered numerous firearms, including a loaded semiautomatic pistol located on the couch in the living room.

Following the search, Colon was arrested but later released, although it is unclear from the record the charges filed or the basis for his release. In any event, after his release, Colon continued to sell drugs from 1105 Clay Street, and at some point he expanded his operations to the residence attached to 1105 Clay Street, 1113 Clay Street, a house owned by William Price. When Price confronted Colon about his operation, Colon threatened Price with a gun and told Price that he wasn't leaving. Notwithstanding this threat, on June 26, 1998 Price called the Gary Police and informed them of Colon's drug dealing and threats. The police responded to Price's complaint, going to 1105 Clay Street. Dennis Allen answered the door. After identifying themselves, the officers asked if they could come in and Allen allowed them to enter. In doing so, Allen told the officers that no one else was home. Once inside, the officers saw a package of marijuana lying on the floor. At that point, appellant Marc Flores walked out of the kitchen. Now knowing that drugs were involved and that Allen was not alone in the house, the police immediately conducted a protective sweep of the residence. In the kitchen on a table, the officers found packaging material near a plate on which there were several rocks of crack cocaine and a razor blade. Upstairs they found a .38 caliber revolver.

Upon recovering this evidence of drug trafficking, the Gary Police turned the case over to the FBI's Gary Response Investigative Team, commonly referred to as GRIT. GRIT then obtained a search warrant for 1105 Clay Street, executing it on July 2, 1998. During the search, GRIT discovered on the floor of a bedroom 6.5 grams of rock cocaine, $167 in cash, and a crack pipe. The officers also recovered several documents bearing Colon's name and the address of 1105 Clay Street. In the kitchen, the officers found baking soda and implements commonly used for cooking crack, and in the attic they recovered a .22 caliber revolver.

At trial, the government presented additional evidence pertaining to the charges against Flores and Arocho. Specifically, the government presented Price's testimony that he had seen Marc Flores going into 1105 Clay Street in both May and June. Allen also testified that on June 26, the day of the second search of 1105 Clay Street, Flores had been selling marijuana from the house. Additionally, Allen testified that both Flores and Arocho sold crack for Colon, answered the door for customers, collected their money and then handed out the crack. Allen also explained that if they ran out of drugs, they would page Colon who would return with more. Additionally, Allen testified that Flores would sometimes stand outside as a lookout, and that Arocho would help cook and cut the crack. The evidence also established that Arocho had firearms during the transactions and that Flores would handle Colon and Arocho's guns during various drug transactions as well. Finally, Allen testified that Arocho was in charge of the drug operation when Colon was away from the house.

Based on this evidence, the jury convicted the appellants on all counts. On January 19, 2000 Flores was sentenced to 262 months' imprisonment on Counts 1 and 5, and

240 months' imprisonment on Count 2, all to be served concurrently, and a consecutive sentence of 60 months on Count 7, for a total prison term of 322 months. Arocho was sentenced to a term of imprisonment of 327 months on Counts 1 and 5, 240 months on Count 2, and 120 months on Count 8, all to be served concurrently, and a consecutive sentence of 60 months on Count 7, for a total term of imprisonment of 387 months.

Colon's sentencing hearing was scheduled for February 3, 2000. While waiting for the hearing, Allen, who was scheduled to testify on the government's behalf, informed the government that he thought he recognized one of the jurors who had sat during the trial. The government immediately informed the court of this disclosure. The court decided to sentence Colon first and then inquire into this issue. The court sentenced Colon to life imprisonment on Counts 1 and 3, 240 months on Counts 2 and 4, 480 months on Count 5, and 120 months on Count 8, all to be served concurrently, plus consecutive sentences of five years on Count 6 and 20 years on Count 7 for a total sentence of life plus 25 years.

After sentencing Colon, the district court then questioned Allen as to his knowledge of one of the jurors. Allen explained that he was about "fifty percent" sure that he recognized one of the jurors as his former landlord, Alvin Mickens—although Allen identified the juror as Alvin "Macklin." Mickens was later called back to court and asked further questions about his relationship with Allen. In response to detailed questions, Mickens explained that Allen's girlfriend or wife (he wasn't sure which) lived in an apartment owned by his grandparents, and that he may have spoken to Allen on about five occasions for a total of approximately 30 minutes. The appellants filed a motion for a new trial based on Mickens' relationship

with Allen, arguing that Mickens had not honestly answered the pre-trial voir dire questions. However, during that voir dire Mickens did disclose that he knew Allen and that they had lived in the same building. Accordingly, the district court denied the appellants' motion for a new trial. They now appeal from this denial, as well as challenge their convictions and sentences on other grounds.

## II.

On appeal, the appellants first argue that the district court erred in denying their motion for a new trial based on juror Mickens' knowledge of Allen. The appellants also challenge the district court's evidentiary ruling prohibiting them from inquiring into the specific reduction in sentence or sentencing range that Allen and another cooperating witness, Carmen Hernandez, received for testifying on behalf of the government. Additionally, all of the appellants challenge the constitutionality of 21 U.S.C. § 841 and, alternatively, Colon challenges his sentence based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Colon and Arocho also argue that the evidence was insufficient to support their convictions for witness tampering. Colon, in a *pro se* supplemental brief, further argues that Congress exceeded its power to regulate commerce in passing 18 U.S.C. § 924(c) (Using a Firearm During the Commission of a Drug Offense) and 21 U.S.C. § 856(a)(1) (Maintaining a Drug House Offense), and that under *United States v. Lopez*, 514 U.S. 549 (1995), those statutes are unconstitutional. Finally, Flores maintains that the district court erred in refusing to grant him a sentencing reduction pursuant to U.S.S.G. § 3B1.2 for being a minor or minimal participant.

### A.  Motion for a New Trial

The appellants first contend that they are entitled to a new trial because juror Mickens did not honestly respond to questions during voir dire. To obtain a new trial on this basis, a party must demonstrate that a juror failed to answer honestly a material question on voir dire, and that had the juror provided the correct response, that response would have provided a valid basis for a challenge for cause. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556 (1984); *United States v. May,* 214 F.3d 900, 907 (7th Cir. 2000). The district court denied the appellants' motion for a new trial, concluding that they had "not shown that juror Mickens' answers to voir dire questions were in any respect not true. . . ." We review this decision for an abuse of discretion. *United States v. Reed,* 875 F.2d 107, 113 (7th Cir. 1989).

Like the district court, we begin by asking whether Mickens failed to honestly answer a material question at voir dire, and only if we answer that question in the affirmative do we proceed to the second prong and determine whether the response would have provided a valid basis to challenge the juror for cause. To begin this inquiry, we turn to the voir dire process that took place in this case.

In this case, the district court judge began voir dire by randomly selecting twelve prospective jurors and seating them in the jury box, with the other potential jurors remaining in the gallery area. Before questioning those in the jury box, the district court directed the remaining venire in the gallery area to listen carefully to his questions in case they were called to the jury box as a potential juror. One of the questions the court asked prospective jurors was whether they had any knowledge of or relationship to any of the people on the witness list. At

this time, Mickens was seated in the gallery area. Nearly four hours later, Mickens moved to the jury box, at which time he volunteered to the court that he would have answered "yes" to one of the court's prior questions. Mickens informed the court that he recognized one of the names from the list of prospective witnesses—an individual named Dennis Allen. The following colloquy then took place between the court and Mickens:

Q: . . . You know a Dennis Allen?

A: There was a Dennis Allen that lived in the same building I lived in a couple months ago.

Q: Do you know how old your Dennis Allen is approximately?

A: Guess in his forties. I have—

Q: In his forties. And what city?

A: Gary.

Q: What part of Gary?

A: Mid-town.

The court: Is that the same Dennis Allen?

AUSA Benson: We need a better description, judge.

Q: Can you give us a better description of the Dennis Allen that you know. Approximate height?

A: Three daughters, that's all I know.

Q: I'm sorry?

A: He has three daughters in the same building.

The court: Is that the same one?

AUSU Benson: Could be.

Q: Okay, if it is the same one, can you tell me how you know him again?

> A: He lived in the same building, apartment building that I lived in.
>
> Q: Do you have any contact with him?
>
> A: (Witness shakes head.)
>
> Q: Did you ever talk with him?
>
> A: On occasion.
>
> Q: On occasions?
>
> A: In passing.
>
> Q: Okay. If he were to testify as a witness in this case, could you treat his testimony just like you could the testimony of any other person?
>
> A: Sure.
>
> Q: Okay. He's not a friend or acquaintance of yours that you frequently do anything with? You're just seeing him in passing?
>
> A: (Witness nods head.)

After this exchange, the district court asked the government and the defendants whether they wanted to ask any further questions. They all declined. Mickens was then accepted as an alternate juror. However, a juror was excused during the course of trial, and therefore Mickens eventually participated in the jury's deliberations.

At oral argument, we asked the appellants' attorney to identify the specific response from this colloquy that was false. He could not do so. That is enough to doom their argument. Nevertheless, the appellants argue that Mickens did not honestly respond to the voir dire questions because he did not detail the extent of his "in passing" relationship with Allen, as he did when subsequently and specifically questioned by the attorneys and the court

following sentencing. However, these additional details do not further their argument because they confirm the truthfulness of Mickens' voir dire responses. Specifically, during further questioning by the court after Colon's sentencing, Mickens explained that his grandparents owned a building with four apartments, and that he lived in one of the apartments. He explained that Evelyn Russell lived in another apartment with her three daughters, and that Russell was either Allen's girlfriend or wife. Mickens also explained that he helped his grandparents with rent collection issues, and that eviction proceedings were filed against Russell when she failed to pay rent. But Allen was neither a party to the lease nor involved in the lawsuit in any manner. Upon further inquiry, Mickens also informed the court that he had been in contact with Allen less than five times totaling approximately 30 or 40 minutes. Mickens further explained that when Allen entered the courtroom to testify at the appellants' trial, he did not recognize Allen right away, but did so after looking at him a while.

This testimony is consistent with the answers Mickens gave during voir dire.[3] Furthermore, the appellants' trial

---

[3] While the appellants do not focus on it, there was one possible conflict. During voir dire, Mickens stated that Allen lived in the same apartment complex, but when recalled to court after the trial, Mickens claimed that Allen's girlfriend lived in the apartment and denied knowing whether Allen ever stayed over. The district court concluded that this apparent conflict likely resulted from Mickens' "hyper-vigilian[ce] in answering questions" upon being recalled to court and in doing so distinguishing between staying somewhere and living somewhere. Thus, as the court reasoned, Mickens "denied that Allen 'lived' in the building because Allen was not a party to the lease and,

(continued...)

attorneys had an opportunity to ask Mickens what he meant by "in passing" during voir dire, but chose not to. They cannot now "sandbag" the government by spinning the subjectivity of Mickens' response into a lie. *See, e.g., Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142 (7th Cir. 1992) (where juror revealed in voir dire that he had been a plaintiff in a personal injury suit and involved in union affairs, the defense attorneys' failure to further question the juror as to union involvement until after the jury returned an unfavorable verdict looked like sandbagging). Moreover, given that Allen did not even recognize Mickens in the courtroom for some time, and then was only 50% sure that he recognized him, and even then thought his name was "Macklin," we believe that the "in passing" characterization of the men's relationship was appropriate. Under these circumstances, we conclude that the district court did not abuse its discretion in denying the appellants' motion for a new trial on the basis of Mickens' voir dire responses.

## B.   Limitations in Cross-Examinations

The appellants next argue that the district court erred in limiting their cross-examination of Allen and Hernandez.

---

[3]  (...continued)
although he apparently presumed that Allen spent his nights in the apartment with Russel, he lacked actual knowledge that that was true." Moreover, any potential conflict was immaterial given that Mickens' voir dire testimony disclosed a greater connection to Allen than did Mickens' more detailed explanation at the hearing which followed the appellants' sentencing. *See McDonough*, 464 U.S. at 556 (to obtain a new trial, a party must demonstrate that a juror failed to answer honestly a *material* question during voir dire) (emphasis added).

Both Allen and Hernandez had been charged with numerous counts of drug-related offenses, but they subsequently entered into plea agreements. Pursuant to their plea agreements, Allen and Hernandez pleaded guilty to one count of conspiracy and agreed to cooperate with the government's prosecution of the appellants. The jury heard evidence as to the plea agreement, and learned that in exchange for their testimony, the government had dismissed several counts against Allen and Hernandez. The jury also learned that Allen and Hernandez expected to receive a substantial benefit at their sentencing for testifying against the appellants. However, the appellants wanted to question Allen and Hernandez in more detail as to the specific sentences and the sentencing guideline ranges they faced both before and after their cooperation with the government. The government filed a motion in limine to prevent this line of inquiry, and the district court granted that motion, reasoning that such testimony would improperly alert the jury to the potential sentences the defendants on trial faced if convicted. The appellants now appeal the district court's limitation on their cross-examination of Allen and Hernandez.

A trial court's restriction or limitation of cross-examination is reviewed for an abuse of discretion, unless the restriction impacts the defendant's Sixth Amendment right to confrontation, and then the review is *de novo*. *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998). A district court "may reasonably limit the scope and extent of cross-examination based on concerns about things like harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant." *United States v. Cavender*, 228 F.3d 792, 798 (7th Cir. 2000). Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness' credibility, motives, or possible bias, the Sixth Amendment is not com-

promised by a limitation on cross-examination." *Cueto*, 151 F.3d at 638.

In this case, the appellants were able to elicit sufficient information to allow the jury to assess Allen and Hernandez's credibility, motives and bias. Specifically, the jury learned that in exchange for their cooperation the government dismissed other pending criminal counts and that they expected to receive substantial benefits at sentencing for their testimony. Additionally, the jury was instructed that they should consider Allen and Hernandez's testimony "with caution and great care" because of these benefits. Accordingly, the district court's ruling restricting testimony about the specific sentencing guideline ranges and sentences did not impact the appellants' Sixth Amendment rights. *See, e.g., Cueto*, 151 F.3d at 638 (holding that the defendants had ample opportunity to demonstrate lack of credibility and therefore the district court's limitation on cross-examination did not implicate the Sixth Amendment).

The only remaining question then is whether the district court abused its discretion in prohibiting testimony about the specific guideline range and sentence. We hold that it was not, for several reasons. First, the jury was aware that Allen and Hernandez were benefitting greatly by testifying, and therefore any additional testimony, at best, was only marginally relevant. Second, this testimony would place before the jury information from which it could infer the potential sentences the appellants faced and that could improperly sway the jury. *See, e.g., United States v. Xheka*, 704 F.2d 974, 984 (7th Cir. 1983) (holding that the district court did not abuse its discretion in prohibiting questions on cross-examination which would elicit the maximum penalty the witness faced if convicted). *See also, United States v. Alvarez*, 987 F.2d 77, 82 (1st Cir.

1993) (cross-examination as to sentence witness potentially faced would mislead or confuse the jury where the defendant on trial faced the same penalties). Moreover, to the extent the appellants wanted to question Allen and Hernandez as to the sentencing guideline provisions, that detailed inquiry could place in dispute many side issues, and could also confuse the jury as to the real issue at hand. Under these circumstances, we conclude that the district court did not abuse its discretion in precluding a more specific line of inquiry into the applicable guideline ranges or the specific sentences Allen and Hernandez faced, especially in light of the jury instruction cautioning the jury to consider their testimony with great caution. *See, e.g., Alvarez,* 987 F.2d at 82 (holding that the district court did not abuse its discretion in barring a witness from testifying as to the precise penalty he could face if convicted of drug trafficking where the witness faced the same charges and penalties as the defendants on trial). *See also, United States v. Fitzgerald,* 579 F.2d 1014 (7th Cir. 1978) (holding that the district court did not abuse its discretion in prohibiting cross-examination of witness as to the potential sentence the witness faced).

### C. *Apprendi* **Issues**

The appellants next all argue that 21 U.S.C. § 841 is unconstitutional in light of *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and appellant Colon argues in the alternative that his sentence violated *Apprendi* because the judge rather than the jury determined the quantity of drugs involved in his offense.

In *Apprendi,* the Supreme Court held that "factors which subject a defendant to an enhanced penalty, except prior felony convictions, are elements of the crime that must

be charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt." *United States v. Booker*, 260 F.3d 820, 822 (7th Cir. 2001) (citing *Apprendi*). Thus, if the quantity of drugs involved has the effect of increasing the defendant's sentence above the statutory maximum term of imprisonment, the issue must be submitted to a jury and proved beyond a reasonable doubt. *See United States v. Nance*, 236 F.3d 820, 824-25 (7th Cir. 2000).

The appellants argue that Section 841 is unconstitutional after *Apprendi*. As noted here, *Apprendi* requires a jury to find beyond a reasonable doubt a factor which subjects a defendant to an enhanced sentence. Appellants maintain that because Section 841 neither sets forth this burden of persuasion nor allocates which issues should be decided by a jury or a judge, it is unconstitutional. We rejected that argument in *United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001), holding that "[t]here is no constitutional defect in the design of § 841 and . . . there is no impediment to convictions under the statute" *id.* at 1080 because Section 841 was written broadly enough to allow the judiciary to apply it in the manner required by *Apprendi*. *Id.* at 1079.

In their opening brief, the appellants ask us to reconsider our decision in *Brough* based on the Ninth Circuit's decision in *United States v. Buckland*, 259 F.3d 1157 (9th Cir. 2001), which held that Section 841 was unconstitutional. *Id.* at 1168. However, the Ninth Circuit, sitting en banc, reversed the panel's decision in *Buckland* and upheld the constitutionality of Section 841. *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002), *overruling United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000), and *Arreguin v. Prunty*, 208 F.3d 835 (9th Cir. 2000). Moreover, every other circuit to consider the issue has concluded that Section 841 remains constitutional after *Apprendi*. *United States v. Outen*, 286 F.3d 622, 634 (2d Cir. 2002) (collecting cases). *See also*

*United States v. Palmer*, 297 F.3d 760, 767 (8th Cir. 2002) (wherein the Eighth Circuit joins the consensus of other circuits holding that *Apprendi* does not render Section 841 unconstitutional). There is no reason to revisit our decision in *Brough* that Section 841 is constitutional.

Alternatively, Colon argues that his sentence violated *Apprendi* because the judge, rather than the jury, determined the quantity of drugs involved in his offenses.[4]

---

[4] While Flores challenges the constitutionality of Section 841 in light of *Apprendi*, he does not claim that his sentence violated *Apprendi* because the judge, rather than the jury, determined the quantity of drugs involved in his offense. Nor would such a challenge succeed because the evidence established beyond a reasonable doubt that Flores was responsible for at least five grams of crack cocaine—the amount of crack required to raise the maximum statutory penalty to 40 years, which exceeds the 262-month sentence Flores received on counts 1 and 5. Likewise, Arocho does not seem to challenge the district court's determination of the quantity of drugs involved in his offense based on *Apprendi*, although in the joint appellee brief for Colon and Arocho, their attorney argues that "*defendants'* case should be reversed and remanded for a new sentencing hearing" because "[u]nder *Apprendi*, the determination of the amount of drugs attributable to the *defendant* must be submitted to the jury." It is unclear from this language whether both Colon and Arocho are attempting to challenge their sentence based on *Apprendi*. However, in addressing this issue, only Colon's sentence is discussed; no mention is made of Arocho's sentence. Nor is there any analysis of Arocho's sentence under *Apprendi*. Thus, to the extent Arocho sought to challenge his sentence based on *Apprendi*, he has waived the argument. In any event, any *Apprendi* claim would fail: Arocho was sentenced to 327 months on Counts 1 and 5, and concurrent sentences of 240 months and 120 months on Counts 2 and 8. Under 21 U.S.C. § 841(b)(1)(C),

(continued...)

Colon did not raise this issue during his trial or sentencing, and therefore we review for plain error. *United States v. Martinez*, 289 F.3d 1023, 1027 (7th Cir. 2002). "Under this standard, [the appellant] must establish (1) there was error; (2) the error was plain; (3) the error affected a substantial right; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

In this case, the district court sentenced Colon to life imprisonment after finding him responsible for more than 1.5 kilograms of crack cocaine and 44.7 grams of heroin. Applying *Apprendi*, the district court erred in failing to submit the issue of the quantity of drugs to the jury. We have held such an error to be plain and to affect the substantial rights of the defendant. *See United States v. Adkins*, 274 F.3d 444, 455 (7th Cir. 2001) (holding that in light of *Apprendi*, failure to submit quantity of drug issue to jury constituted error and "error is plain, and that the error, which added seven years to [defendant's] sentence affected a substantial right . . ."). However, if it is clear beyond a reasonable doubt that a properly instructed jury would have found the defendant responsible for the requisite quantity of drugs, the error does not "seriously af-

---

[4] (...continued)
Arocho faced a maximum penalty for each of Counts 1 and 5 of 360 months' imprisonment because he had a prior conviction for drug dealing. *See* 21 U.S.C. § 841(b)(1)(C). Therefore, Arocho's sentence did not exceed the statutory maximum, and no *Apprendi* violation occurred. *See United States v. Brumfield*, Nos. 01-3752, 01-4130 *7 (7th Cir. July 29, 2002) (If a defendant's sentence does not exceed the statutory maximum, there is no *Apprendi* violation even if the district court held the defendant "accountable for drug quantities that were not submitted to a jury and proved beyond a reasonable doubt.").

fect the fairness, integrity, or public reputation of the judicial proceeding." *Id.* Rather, any such error would be harmless. *United States v. Booker*, 260 F.3d 820, 822 (7th Cir. 2001).

In this case, under Section 841(b)(1)(A), a defendant may be sentenced to life imprisonment if the quantity of crack involved totals fifty grams or more. 21 U.S.C. § 841(b)(1)(A). Therefore, while the district court found Colon responsible for 1.5 kilograms of crack cocaine and 44.7 grams of heroin, we need only determine whether the evidence presented at trial makes clear beyond a reasonable doubt that Colon was responsible for at least 50 grams of crack. At trial, an Indiana State Police chemist testified that she tested 12 bags of crack recovered during the January 29, 1998 search of 1105 Clay Street, and that six of the bags contained 165.99 grams of a substance definitely containing cocaine base, and that another six bags whose contents weighed 146.94 grams indicated cocaine base. Based on this evidence, the jury convicted Colon on Count 3 which had charged him with possession with intent to distribute in excess of 50 grams of crack cocaine on January 29, 1998. This conviction and the evidence supporting it make clear beyond a reasonable doubt that had the jury been asked to determine the quantity of drugs involved, it would have held Colon responsible for at least 50 grams of crack. Therefore, the error in not sending the quantity of the drugs to the jury did not seriously affect the fairness, integrity or public reputation of the judicial proceeding as to Colon. Or put another way, any error in sentencing Colon was harmless. *See, e.g., Adkins*, 274 F.3d at 445 (*Apprendi* error was harmless because it was clear beyond a reasonable doubt that the defendant was responsible for the quantity of drugs necessary to support his sentence); *Booker*, 260 F.3d at 822 (same).

**D. Sufficiency of the Evidence to Convict Colon and Arocho for Witness Tampering**

Colon and Arocho next challenge the sufficiency of the evidence supporting their conviction on Count 8 for witness tampering. Specifically, Count 8 charged Colon and Arocho with attempting to corruptly influence the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1). This charge stemmed from Colon and Arocho's contact with Allen while they were in prison and their alleged attempts to induce Allen to testify falsely at their trial that he was intoxicated at the time that he made a statement to the police incriminating them. A jury found Colon and Arocho guilty on this count.

In reviewing a jury's verdict for the sufficiency of the evidence, we view the evidence, together with all reasonable inferences, in the light most favorable to the government. *See United States v. Swanquist*, 161 F.3d 1064, 1071 (7th Cir. 1998). We neither reweigh the evidence nor assess the credibility of the witnesses. *See United States v. Irorere*, 228 F.3d 816, 822 (7th Cir. 2000). Rather, the sole question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* We will overturn a jury verdict only if the defendant can establish that "the record contains no evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Goudy*, 792 F.2d 664, 674 (7th Cir. 1986).

In this case, to have convicted Colon and Arocho under Section 1512(b)(1) for witness tampering, the jury was required to find beyond a reasonable doubt that 1) Allen was a witness or a prospective witness; 2) defendants Colon and Arocho attempted to persuade Allen to provide false testimony; and 3) defendants Colon and Arocho

acted knowingly and with the intent to influence Allen's testimony.[5] *See* 18 U.S.C. § 1512(b)(1); *United States v. Johnson*, 903 F.2d 1084, 1087 (7th Cir. 1990). Reading the evidence in the light most favorable to the government, we conclude that all of these elements were satisfied. First, there is no dispute that Allen was a prospective witness. As to the last two elements, the government presented evidence that following their arrest, Allen, Colon and Arocho were all housed at the Metropolitan Correctional Center in Chicago on the same floor, and that for two or three months, Allen shared a cell with Colon. During this time, Colon told Allen they could beat the case if Allen and Flores would change their stories and claim that they were threatened by the police. Colon, joined by Arocho, also told Allen to say that he was scared, drunk and high on drugs at the time that he gave the officers a statement and that the officers had threatened him. Allen originally told Arocho and Colon that the statement he had given the officers was true and that he was not going to change it. At trial, Allen testified that Colon and Arocho nonetheless approached him again, presenting him with a typed document to sign, which stated that he was drunk, high on drugs and had been threatened by the officers. Allen tes-

---

[5]  Section 1512(b) provides:

> Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so . . ., with intent to—
>
> > (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> >
> > (2) cause or induce any person to—
> >
> > > (A) withhold testimony. . . .
> > > shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

tified that he signed the document even though the statements were not true because he felt that if he did not sign it, he would continue to have confrontations with Colon and that he was worried about prison security. Based on this evidence, a jury could reasonably conclude that Colon and Arocho were attempting to persuade Allen to provide false testimony and that they acted knowingly and with the intent to influence Allen's testimony. Therefore, Colon and Arocho's sufficiency of the evidence challenge fails.

### E. Flores' Sentence—Denial of a Downward Adjustment Under U.S.S.G. § 3B1.2

In addition to the various challenges to his conviction, Flores also appeals his sentence. His sentencing challenge, however, is limited to one issue: Flores argues that the district court erred by denying him a reduction for being a minimal or minor participant under U.S.S.G. § 3B1.2.

Section 3B1.2 provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> > (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> >
> > (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2

Application Note 1 explains the propriety of a Section 3B1.2 reduction:

> Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in

concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

U.S.S.G. § 3B1.2 comment. (n.1).

Application Note 3 further explains that Subsection (b) applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 comment. (n.3).

The district court denied Flores' request for a minor or minimal participant reduction, noting that while his role was a little different than others, "[h]e certainly was not a minor or minimal participant in this conspiracy as contemplated by the guidelines." We review this determination for clear error. *See United States v. Cain*, 155 F.3d 840, 844 (7th Cir. 1998). Clear error exists only if, after reviewing the evidence, we are left with a definite and firm conviction that a mistake has been committed. *See United States v. Hunte*, 196 F.3d 687, 694 (7th Cir. 1999).

The evidence in this case more than supports the district court's conclusion that Flores was not a minor or a minimal participant. Specifically, the government presented evidence that Flores fully participated in the conspiracy by acting as a look-out, waiting on customers, and delivering drugs. The evidence also created a reasonable inference that Flores assisted in the cutting and packaging of crack. The officers testified that after entering the house at 1105 Clay Street on June 24, 1998, they saw Flores exit

the kitchen, and a subsequent search of the kitchen revealed crack lying on a plate with a razor blade and next to it packaging materials. Given that no one else was in the kitchen, and given Flores' involvement in other aspects of the drug operations, it is reasonable to infer from this evidence that Flores was assisting in the packaging of the crack. In fact, Flores' attorney concedes as much, stating that "this may be an appropriate inference," although he argues that "it is just as likely that Mr. Flores had simply been in the kitchen when the police arrived." However, where two competing inferences flow from the facts, it is not clear error for the district court to choose one. Moreover, the evidence as a whole demonstrates that Flores understood the full extent of the criminal activities; he lived at the house and witnessed the day-to-day criminal enterprise.

While Flores attempts to downplay his role, arguing that he was merely a crack addict who lived in the house for a couple of weeks, the district court heard contrary evidence from which it could find that Flores was a full participant in the conspiracy. Moreover, to the extent that Flores' argument is tied to the limited time during which he participated in the criminal activities, that was already taken into account by the district court in setting his sentence; the district court only held him responsible for the drugs sold during a three-week time frame. Finally, while Colon and Arocho were admittedly more involved in the criminal activities, Flores was still not "less culpable than most other participants." In fact, his role mirrored that of Allen and Hernandez, and to some extent that of Arocho, who also answered the door, collected money from customers, and delivered crack, although Arocho was also in charge in Colon's absence. Under these circumstances, the district court did not commit clear error in refusing to reduce Flores' offense level pursuant to Section 3B1.2.

### F.   Constitutionality of 18 U.S.C. § 924(c) and 21 U.S.C. § 856(a)(1).

Finally, we consider the arguments raised by appellant Colon in a *pro se* supplemental brief. He argues that 18 U.S.C. § 924(c), Using a Firearm During the Commission of a Drug Offense, and 21 U.S.C. § 856(a)(1), Maintaining a Drug House, are unconstitutional in light of *United States v. Lopez*, 514 U.S. 549 (1995). He argues that Congress exceeded its Commerce Clause power in criminalizing these intrastate activities because neither statute contains the "in or affecting commerce" nexus language.

While this court has yet to consider the constitutionality of Section 924(c) in light of *Lopez*, every other circuit to address the issue has found that the statute is a valid exercise of Congress' commerce power. *United States v. Nguyen*, 155 F.3d 1219, 1226 (10th Cir. 1998) (collecting cases). As the Ninth Circuit explained in *United States v. Staples*, 85 F.3d 461, 463 (9th Cir. 1996), in upholding Section 924(c), that section applies only to the use or carrying of a firearm during or in relation to a federal crime. Thus, Section 924(c) applies only where a connection to interstate commerce already exists. *Id.* 1390. Therefore, "[b]ecause Congress may regulate drug trafficking, it may also regulate the use of firearms connected with that trafficking," without requiring that the firearm be transported in commerce. *United States v. Miller*, 283 F.3d 907, 914 (8th Cir. 2002). We find this reasoning persuasive and accordingly join our sister circuits in upholding the constitutionality of 18 U.S.C. § 924(c).

As to the constitutionality of 21 U.S.C. § 856(a)(1), this court has previously held that Congress acted within its authority to regulate interstate commerce in criminalizing the maintaining of a drug house because drug deal-

ing is an economic activity that affects interstate commerce. *See United States v. Rogers*, 89 F.3d 1326, 1334, 1338 (7th Cir. 1996). This conclusion flows from the congressional findings made in passing the Controlled Substance Act that intrastate drug activity substantially affects interstate commerce. *See United States v. Peterson*, 236 F.3d 848, 855 (7th Cir. 2001) ("[I]n enacting the CSA, Congress made specific findings . . . that intrastate narcotic activity substantially affects interstate commerce. Based on these findings, when the government prosecutes a defendant under the CSA, it need not show that the conduct in the individual case affects interstate commerce."). Accordingly, as we did in *Rogers*, we hold that Congress acted within its Commerce Clause authority in enacting 21 U.S.C. § 856(a)(1). We therefore reject Colon's challenge to his conviction on this ground as well.

## III.

In sum, the district court did not abuse its discretion in denying the appellants' motion for a new trial because juror Mickens responded truthfully to the questions posed during voir dire. The district court also did not abuse its discretion in limiting the cross-examination of Allen and Hernandez to bar questioning as to the specific sentences and guideline ranges they faced. The appellants' *Apprendi* challenge likewise fails, as Section 841 is constitutional and any error the district court judge made in determining the quantity of drugs involved in the offenses was harmless. Arocho and Colon's challenges to the sufficiency of the evidence also fail because the evidence was more than sufficient to support their convictions for witness tampering. Additionally, Flores' challenge to his sentence fails because the district court did not commit clear error in denying him a reduction for being a minor or minimal

participant. Finally, we reject Colon's challenge to the constitutionality of 18 U.S.C. § 924(c) and 21 U.S.C. § 856(a)(1), and hold that Congress' enactment of these statutes was a proper exercise of its power to regulate commerce. For these and the foregoing reasons, we AFFIRM.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*