**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2005
Decided October 5, 2005

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2792

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br>    *v.* <br><br> TYLER SANDERS, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 03 CR 791 <br><br> Matthew F. Kennelly, <br> *Judge*. |

**O R D E R**

Federal agents arrested Tyler Sanders after he sold a controlled substance to a government informant. A jury convicted Sanders and the district court imposed the statutory minimum applicable to sales of at least 50 grams of "cocaine base." Sanders, citing this court's recent decision reaffirming that "cocaine base as used in the statute means crack cocaine just as it does in the sentencing guidelines," argues that the district court erroneously imposed the minimum for 50 grams of crack cocaine because, in his view, the jury's verdict does not adequately specify that he was found guilty of selling crack cocaine rather than another form of cocaine base. We affirm.

Sanders was arrested and charged with one count of distribution of "a controlled substance, namely, in excess of 50 grams of a mixture and substance containing cocaine base, commonly known as 'crack' cocaine," in violation of 21 U.S.C. § 841(a)(1). At Sanders's trial, two federal agents and the government

informant, Lisa Mahone, testified.  Special Agent Michael Culloton testified that he supplied Mahone with money and she purchased a substance from Sanders that Culloton identified at trial as "crack cocaine."  Culloton also testified, without objection, that lab tests confirmed the substance was "62.7 grams of crack cocaine, or cocaine base."  Another FBI agent, David Twohig, testified that Sanders was arrested a few days after the sale to the informant.  Twohig asserted that after his arrest, Sanders signed a written statement admitting to "dealing in crack cocaine."

Mahone testified that she knew Sanders sold crack cocaine because on one occasion he told her he had to "go into the kitchen," a "street term for cooking cocaine."  She also testified that Sanders only sold "hard" cocaine.  Mahone further testified that after she met Sanders, he dropped a baggie full of brown substance into her lap, and in exchange she gave him $1,250.  When government counsel presented the substance as an exhibit to Mahone, she examined it and stated that it appeared to be "crack cocaine."

Both parties stipulated that, if necessary, a forensic chemist would testify that the substance Sanders sold to Mahone was approximately 62.7 grams of a "mixture containing cocaine base commonly known as crack cocaine."  The verdict form submitted to the jury allowed it to find Sanders either guilty or not guilty of "distribution of a controlled substance, namely, in excess of 50 grams of cocaine base, commonly known as 'crack' cocaine."  The jury found Sanders guilty; at sentencing the district court, without objection, imposed a term of twenty years' imprisonment, the statutory minimum for a defendant with a prior felony drug conviction guilty of distribution of at least 50 grams of crack cocaine.  *See* 21 U.S.C. § 841(b)(1)(A)(iii).  Based on Sanders's postarrest confession, combined with the relevant conduct, the district court concluded the drug quantity totaled between 500 grams and 1.5 kilograms of crack.

Sanders's appellate counsel originally attempted to withdraw under *Anders v. California*, 386 U.S. 738 (1967), but withdrew that motion and filed a merits brief after the release of *United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005), which reaffirmed our earlier decision holding that "cocaine base" in § 841(b)(1)(A)(iii) means cocaine base in the form of crack.  *Id.* at 577; *United States v. Booker*, 70 F.3d 488, 494 (7th Cir. 1995); *see also United States v. Booker*, 260 F.3d 820, 823-24 (7th Cir. 2001).  Sanders now challenges the district court's imposition of the mandatory minimum for crack under § 841(b)(1)(A)(iii) because, he says, the court could not discern from the "ambiguous" verdict form whether the jury concluded that he distributed crack cocaine or some other form of cocaine base.

Sanders's argument that the district court impermissibly sentenced him for crack cocaine based on an "ambiguous" jury finding is misplaced.  The jury verdict seems clear enough, but the easier answer is that the jury's verdict played no role in the sentencing in this case.  For purposes of § 841, drug type (like quantity) is a sentencing factor committed to the sentencing court to find by a preponderance of

the evidence. *United States v. Horton*, 244 F.3d 546, 551-52 (7th Cir. 2001); *United States v. Nance*, 236 F.3d 820, 823-24 (7th Cir. 2000). If the government seeks to increase the statutory maximum under § 841(b)(1) based on drug type, then in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the kind of controlled substance must be treated as if it were an element of the offense to be determined by a jury beyond a reasonable doubt. *E.g.*, *United States v. Robinson*, 250 F.3d 527, 529 (7th Cir. 2001); *Horton*, 244 F.3d at 552. But *Apprendi* has no relevance to this case because the government did not seek to increase the statutory maximum; thirty years is the default statutory maximum for *any* form of cocaine if the defendant has a prior felony drug conviction. 21 U.S.C. § 841(b)(1)(C); *Booker*, 260 F.3d at 822. Sanders stipulated at trial that the government's exhibit was "cocaine base," and the evidence at trial referred to the "crack" form of cocaine base. In any event, Sanders faced up to thirty years' imprisonment whether or not the cocaine base was in the form of crack.

The type of cocaine base was relevant to the extent that in combination with the amount of drug and Sanders's prior felony drug conviction it triggered a twenty-year minimum term. 21 U.S.C. § 841(b)(1)(A)(iii). But the rule of *Apprendi* does not apply to statutory minimums. *Harris v. United States*, 536 U.S. 545 (2002); *United States v. Souffront*, 338 F.3d 809, 827 (7th Cir. 2003).

Finally, Sanders is simply wrong in suggesting that *United States v. Booker*, 125 S. Ct. 738 (2005), compelled a jury determination of the drug type. As this court has explained, *Booker* does not affect mandatory minimums. *United States v. Jones,* 418 F.3d 726, 732 (7th Cir. 2005); *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005); *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005).

What matters, then, is the district court's finding that Sanders dealt specifically in crack. The discussion at sentencing was not framed in terms of crack versus other forms of cocaine base (because Sanders never raised a concern about drug type), but the district court could not have meant anything but crack when it found by a preponderance that the drug quantity under the guidelines was between 500 grams and 1.5 kilograms of "cocaine base." Long before *Edwards*—since 1993—the guidelines have explicitly defined "cocaine base" to mean "crack," and the district court's drug finding must be understood in that light. *See United States v. Johnson*, 396 F.3d 902, 905 (7th Cir. 2005).

Once it is understood that the jury's belief about drug type did not have any effect on the sentence imposed, there is nothing left of this appeal. Sanders does not argue that the district court committed error in finding by a preponderance that his offense involved crack. *See United States v. Rivera*, 411 F.3d 864, 866 (7th Cir. 2005); *United States v. Garrett*, 189 F.3d 610, 612 (7th Cir. 1999). Indeed, the evidence is overwhelming. The parties' stipulation that a chemist would identify the substance as "cocaine base, commonly known as crack" should suffice. *See United States v. Bradley*, 165 F.3d 594, 595-96 (7th Cir. 1999) (observing that

"experienced DEA agent testified that when an analyzed substance is 'crack,' the chemist's report calls it 'cocaine base'"). And if the chemist's analysis alone was not enough, the informant's testimony that Sanders sold her "crack cocaine," along with Sanders's own admission to police that he sold crack, is enough to increase Sanders's sentence. *See id.* ("[T]hose who smoke, buy, or sell this stuff are the real experts on what is crack."); *see also United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003) (explaining that drug dealer's postarrest statements are especially reliable in establishing the extent of trafficking because no one is "more qualified" than the dealer to provide such information); *see also United States v. Earnest*, 185 F.3d 808, 812 (7th Cir. 1999) ("[T]he witnesses who testified were no strangers to crack cocaine.").

Moreover, Sanders presents no reason to believe the substance was some other form of cocaine base, such as coca paste, *see Bradley*, 165 F.3d at 596; unlike the appellant in *Edwards*, Sanders did not dispute at trial that the substance was "crack." *See Booker*, 260 F.3d at 823-24 (chemical tests as well as coconspirator and officer testimony were "overwhelming proof that the drugs were crack."). Thus, it was not error for the district court to conclude that the substance at issue was crack cocaine.

AFFIRMED.