**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Turner ASHE, Jr., Defendant–
Appellant.**

No. 03–3939.

United States Court of Appeals,
Seventh Circuit.

Submitted June 4, 2004.[1]

Decided June 17, 2004.

Barry D. Glickman, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Kevin McShane, Indianapolis, IN, for Defendant–Appellant.

Before FLAUM, Chief Judge, DIANE P. WOOD, and EVANS, Circuit Judges.

**ORDER**

In late 2002, Salvador Barragan made two trips from Los Angeles, California, to Indianapolis, Indiana, with 5 kilograms of cocaine in a hidden compartment of a Toyota Avalon. On the first trip he was accompanied by Ricardo Mayorga. They de-

---

1. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a); Cir. R. 34(f).

livered the cocaine to a body shop, where they were met by appellant Turner Ashe. Four kilograms of cocaine were transferred to another car. A few days later, Ashe, Barragan, and Jaime Aispuro returned to the body shop and wrapped stacks of money, which were placed in the Toyota, which Barragan and Mayorga then drove back to California.

The second trip did not go so well. This time accompanied by his girlfriend, Paola Mayorga, Barragan was stopped on Interstate 70 in Kansas for a traffic offense. The state trooper requested consent to search the Toyota, which led to the discovery of the cocaine. Taken to the Kansas Highway Patrol barracks in Topeka, Barragan agreed to cooperate with law enforcement in making a controlled delivery of the cocaine. Barragan proceeded to Indianapolis to deliver the goods. This time, his fellow drug dealers told him to leave the keys inside the car so it could be driven away, cocaine and all. Ashe and Aispuro drove up in Ashe's Chevrolet Blazer and eventually stopped nearby. Aispuro got into the Toyota, at which time both he and Ashe were arrested.

A search of Ashe's Blazer revealed a gym bag containing plastic bags with cocaine residue, numerous boxes of plastic bags, surgical gloves, surgical face masks, a razor blade holder, aluminum foil, and two knives. Ashe denied knowing that the gym bag was in his vehicle.

Ashe, Barragan, and Aispuro were indicted for conspiracy to possess with intent to distribute cocaine. Aispuro absconded and is currently a fugitive. Barragan entered into a plea agreement under which he agreed to testify against Ashe. Ashe went to trial before a jury and was convicted. He was sentenced to life imprisonment and now appeals both his conviction and sentence. He contends that his confrontation rights were violated by the trial court's limitation on the cross-examination of Barragan concerning his understanding of the specific sentencing guideline range he faced before he entered into his plea agreement. As to sentencing, Ashe contends that the finding that he was convicted of two previous drug felonies was clearly erroneous and, further, that it was error for the district judge, Sarah Evans Barker, to make her findings of fact orally when, Ashe contends, 21 U.S.C. § 851 requires written findings.

■ Turning first to the cross-examination of Barragan, we cannot find that Ashe was denied his confrontation rights. Barragan testified that he knew the potential penalty for the offense with which he was charged was 10 years to life imprisonment and that he expected a "light sentence" as a result of his plea agreement and testimony. On cross-examination he was asked about his understanding of the minimum sentence he would receive; he said 10 years. He was asked if he was aware that he could receive significantly more than that because of his prior convictions and he replied that he was. Defense counsel then attempted to question Barragan regarding specific sentencing calculations under the United States Sentencing Guidelines. The government's objection to this line of questioning was sustained. The court allowed, however, questions regarding Barragan's understanding of what the government would recommend at his sentencing.

We review restrictions on cross-examination for an abuse of discretion unless the restriction impinges on a defendant's Sixth Amendment right to confront the witnesses against him. In that case our review is *de novo*. *United States v. Cueto*, 151 F.3d 620 (7th Cir.1998). So long as the cross-examination elicits adequate information for the jury "to assess a witness's credibility, motives, or possible bias,

the Sixth Amendment is not compromised...." At 638.

Here, Ashe was able to elicit sufficient information to allow the jury to assess Barragan's credibility, motives, and possible bias. Barragan stated outright that he would be receiving a "light sentence" because of his testimony. Ashe's confrontation rights were not implicated. To drag Barragan and the jury through the intricacies of guideline sentencing is unnecessary and, truth be told, might obscure, not highlight, the point defense counsel was trying to make: that Barragan got a sweet deal for turning on his accomplice.

Viewing the issue simply as an evidentiary matter, the question is whether the district court abused its discretion in limiting Ashe's ability to examine sentencing calculations relevant to Barragan under the sentencing guidelines. The situation is nearly identical to the one we faced in *United States v. Arocho,* 305 F.3d 627 (7th Cir.2002), in which we found that further inquiry would be only marginally relevant, could lead to confusion, and that the "testimony would place before the jury information from which it could infer the potential sentences the appellants faced and that could improperly sway the jury." At 636. Giving jurors specific information about potential sentences a defendant might receive "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States,* 512 U.S. 573, 579, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). We find no error in the judge's ruling on this issue.

■ We turn to the issues Ashe raises as to his sentencing under 21 U.S.C. § 851, which sets out procedures which must be followed if a defendant's sentence is to be increased because of prior felony convictions. Before Ashe's trial, the government filed two separate informations, each alleging a prior felony drug conviction. Pursuant to § 851, Ashe filed an objection to the use of one of the convictions. The issue was whether a conviction in Michigan state court in 1981 involved a felony. Ashe argued that the conviction was not valid because he was 17 years old at the time of the crime and that, in any case, it was not a felony.

The district court ruled that Ashe was barred by the 5–year statute of limitations in § 851(e) from launching a collateral attack on the 1981 conviction. And, Judge Barker further found, the record showed that the conviction was for a felony. She said:

> All of the information that's been supplied to me in the record indicates that this was a felony conviction. The statute that was in effect at the time, the court document that refers to the terms of probation that are also attached as an Exhibit 4 that reflects the circuit court order of probation, all of the evidence taken together makes it clear to me that it was a felony conviction.

Later she said:

> Part of my reasoning depends on the colloquy between the judge and Mr. Ashe back at that time when he said, "Live clean and go straight or you'll be in jail for four years." He couldn't have done that if it was a misdemeanor. The four years wouldn't be permissible under state law.

Section 851(e) provides that

> [n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

In *United States v. Arango–Montoya,* 61 F.3d 1331 (7th Cir.1995), we upheld the constitutionality of the statute of limitations in § 851(e) but at the same time said that, because the government might be mistaken in its view that a conviction is valid under the statute, the court should inquire of the defendant whether he affirms or denies the conviction. That was done in this case. Ashe did not deny the conviction but, as we said, argued that it was not a felony and that he was a juvenile. The judge looked at the record, which we agree shows that the conviction was for a felony. The Michigan statute in effect at the time provided that "[a] substance classified in schedule 4 or marihuana, is guilty of a felony, punishable by imprisonment for not more than 4 years, or a fine of not more than $2,000.00, or both." M.C.L.A. 333.7401(2)(c). The record also shows that this was not a sealed juvenile proceeding but what appears to be a routine criminal proceeding in the state court. To go beyond the record would be to allow Ashe to launch a collateral attack on a conviction far older than 5 years.

Ashe's final argument, that the judge's findings pursuant to § 851 had to be in writing, fails as well. Because Ashe had no right to challenge his conviction under subsection (e), it follows that there is no requirement for findings of any kind. In addition, Ashe did not request written findings nor object when the judge entered oral findings. Furthermore, though we do not have to decide the issue at this time, we are far from convinced that the statute requires written findings in any case.

The judgment of conviction and the sentence of Turner Ashe, Jr. are AFFIRMED.